UNITED STATES v. KELLOGG TOASTED CORN FLAKE CO. et al.

(District Court, E. D. Michigan, S. D.   April 14, 1915.)

No. 5570.

1. MONOPOLIES ⬤⟶17—RESTRAINT OF TRADE—PRICE RESTRICTIONS ON RESALE—SALE IN PATENTED CARTONS.

A manufacturer cannot, without violating Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209, in connection with an absolute sale of its product (though with the patented cartons containing it) to a jobber, control the price at which the package shall be resold by the jobber, or by the retailers who buy from the jobber.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ⬤⟶17.]

2. MONOPOLIES ⬤⟶24—PETITION—STRIKING OUT MATTER—IRRELEVANCY.

The allegation in the petition, attacking as violative of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209, price restrictions imposed by a manufacturer on the resale of its product, packed in patented cartons, that it resorts to the cartons as a subterfuge to evade such law, is not so clearly irrelevant as to justify its elimination on motion to strike, though the fact of the cartons being resorted to as a subterfuge be not necessary to lack of protection of the transaction by the patent.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. ⬤⟶24.]

3. MONOPOLIES ⬤⟶17—NECESSITY OF VALID CONTRACT.

Restraint and monopoly being actually effected by price restrictions on resales, imposed by a manufacturer in the absolute sale of its product, it

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is not necessary that they constitute a valid contract, to be violative of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ☜⟶17.]

4. MONOPOLIES ☜⟶17—EVIDENCE—PRIOR TRANSACTIONS.

As elucidating the effect and intent of a plan of sale by a manufacturer of its product, relative to its violation of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209, a prior plan of sale may properly be considered.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ☜⟶17.]

In Equity. Suit by the United States against the Kellogg Toasted Corn Flake Company and others. Heard on motions. Granted in part, and denied in part.

Clyde I. Webster, U. S. Atty., of Detroit, Mich., for the United States.

Chappell & Earl, of Kalamazoo, Mich., for defendants.

Before WARRINGTON and KNAPPEN, Circuit Judges, and TUTTLE, District Judge.

PER CURIAM. The United States filed its petition in equity under section 4 of the Anti-Trust Act of July 2, 1890, attacking, as violative of sections 1, 2, and 3 of the act, certain price restrictions imposed by the manufacturers upon the resale of Kellogg's Toasted Corn Flakes. The case is before us under the Expedition Act. The pertinent allegations of the petition may be thus summarized:

The defendant corporation, which is the owner of the Byrne patent (No. 1,020,536, March 19, 1912), on cartons or packages, manufactures at Battle Creek, Mich., its "corn flakes," which is a breakfast food, selling the product in interstate commerce; sales being made directly to jobbers of cases containing 36 cartons (made under the Byrne patent) filled with its corn flakes, refusing to sell the goods direct to the consumer or the retail trade. The jobbers sell by the case to the retailer, and the latter by package to the consumer. The manufacturer sells at the uniform price of $2.50 per case, exacting from the jobber an agreement to charge the retailer a specified price, uniform in each section (and ranging from $2.75 upwards per case); the jobber's default in this agreement authorizing the manufacturer to refuse to deal further with him. This provision has been strictly enforced by defendants, who refuse to continue dealings with any jobber who fails to maintain prices so fixed. For the purpose and with the intention of fixing and enforcing the observance by the retailer of an absolutely fixed price to the consumer, there is printed on the carton the notice found in the margin of this opinion.[1] Defendants claim that the re-

[1] "This package and its contents are *sold conditionally* by us with the distinct understanding, which understanding is a condition of the sale, that the package and contents shall not be retailed, nor advertised, nor offered for sale at less than 10 cents per package. Retailing the package at less than 10 cents per package is a violation of the conditions of sale, and is an infringement on our patent rights, and renders the vendor liable to prosecution as an infringer.                    Kellogg Toasted Corn Flake Company,
                              "Battle Creek, Michigan."

☜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tailer's purchase, and his undertaking after such notice to sell, amounts to an agreement by him to maintain the specified price. The value of the carton is negligible as compared with the value of the contents, and its purchase is a mere incident in the contract of sale; the contents forming the sole consideration therefor, and being all the purchaser desires. This plan of sale and distribution results generally in an exacting of uniform prices by jobbers in a designated section and absolutely by retailers, and thus in lack of competition between either jobbers or retailers which can affect the cost of the product to either retailer or the consumer, and to restraint upon and monopoly of interstate commerce.

The petition contains further allegations, likewise summarized: (a) Previous to the use of the patented cartons, the manufacturer, by a notice inclosed in the case, required the retailer to sell each package at a fixed price, under penalty of paying certain liquidated damages and to assent to the refusal of further supplies until damages are paid and assurance given that the offense would not be repeated, and a recital that opening the package operates as an admission of the purchaser's understanding and assent to these stipulations; (b) that defendants, having sold the cartons and their contents to the jobbers, parted with all title thereto, and have no legal power to fix the price at which the purchaser from the jobber shall sell the same; (c) the use of the cartons is resorted to as a mere subterfuge and device to avoid the provisions of the Anti-Trust Law and pertinent principles of the common law. (An allegation that the carton was nonpatentable will be treated as withdrawn, in view of plaintiff's motion for leave to do so.)

Plaintiff asks that the selling plan in question be declared violative of the Anti-Trust Act, for injunction in terms designed to prevent its further employment, and for general relief. The present hearing is on, first, the motion, under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), to strike out the paragraphs of the petition, which, as summarized, we have indicated respectively as (a), (b), and (c) above (this motion being made by defendants other than Wilfred C. Kellogg, who has answered and disclaimed), and to dismiss the petition as thus reformed; and, second, plaintiff's motion to amend the petition by adding further allegations (which we likewise summarize in substance sufficient for purposes of this opinion) as follows:

(1) Defendant's product is made from corn; by extensive advertising, and especially by enforcement of the selling plan mentioned, a large demand for the food has been created, trade and commerce therein exceeding that of any other breakfast food made from corn— an attempt to monopolize the entire trade and commerce in breakfast foods, and especially in such foods made from corn, being charged; and that this attempt is or will be entirely or in a large measure successful, from the fact that defendant's plan offers a special inducement to retailers, by enabling them to realize a handsome profit from the sale of corn flakes without fear of being undersold by competitors: (2) that the price received by the manufacturer is a full and adequate compensation for the goods sold, and the only consideration which the manufacturer receives or intends to exact as the purchase price for the goods; the retailers likewise considering that their acceptance of the

product with knowledge of the contents of the notice constitutes a binding contract to maintain the price specified therein and to observe the conditions of the notice as such contract, thereby entering into an agreement or combination with defendant corporation to maintain the prices so specified.

The broad questions presented are (1) whether a manufacturer, in connection with an absolute sale of its product (and the patented package containing it) to a jobber, may lawfully control the price at which the complete package shall be resold by the jobber or by the retailers who buy from the jobber; and (2) whether the selling plan in question effects, under the allegations of the petition, an unlawful restraint or monopoly, actual or attempted.

[1] The general rule is well settled that a system of contracts between manufacturers, jobbers, and retailers, by which the manufacturers attempt to control the prices for all sales by all dealers, at wholesale or retail, whether purchasers or subpurchasers, eliminating all competition and fixing the amount which the consumer· shall pay, amounts to restraint of trade, and is invalid both at common law and, so far as it affects interstate commerce, under the Sherman Anti-Trust Act. Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 400, 31 Sup. Ct. 376, 55 L. Ed. 502; John D. Park & Sons Co. v. Hartman (C. C. A. 6) 153 Fed. 24, 82 C. C. A. 158, 12 L. R. A. (N. S.) 135. The cases cited hold specifically that such agreements are not excepted from the general rule by the fact that they relate to proprietary products manufactured under secret process. By the cases of Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 350, 28 Sup. Ct. 722, 52 L. Ed. 1086, and Straus v. American Pub. Ass'n, 231 U. S. 222, 234, 34 Sup. Ct. 84, 58 L. Ed. 192, L. R. A. 1915A, 1099, Ann. Cas. 1915A, 369, it is settled that the protection of the Copyright Act does not secure to the owner of the copyright the right to qualify future sales by his vendee, or to limit or restrict such future sales to a specified price.

Coming to the right secured by patents upon inventions: In Bement v. National Harrow Co., 186 U. S. 70, 92, 22 Sup. Ct. 747, 756 (46 L. Ed. 1058), it was broadly said that the Sherman Anti-Trust Act—

"does not refer to that kind of a restraint of interstate commerce which may arise from reasonable and legal conditions imposed upon the assignee or licensee of a patent by the owner thereof, restricting the terms upon which the article may be used and the price to be demanded therefor."

What was there said related to a provision in a royalty contract given by the owner of a patent for the manufacture and sale of the patented articles, with a restriction forbidding "any rebate or reduction from the price or prices fixed in the license."

In Henry v. Dick Co., 224 U. S. 1, 23, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, and following, it was held that, while an absolute and unconditional sale operates to pass the patented article outside of the protection of the patent, a patentee may by a conditional sale so "restrict the use of his vendee within specific boundaries of time or place or method" as to make prohibited sales outside of those boundaries constitute infringement. The subject of sale in the Dick Case was a mimeograph sold "with the license restriction that it may

be used only with the stencil, paper, ink, and other supplies made by" the vendor; and contributory infringement was found in a direct sale to the purchaser of a mimeograph of a kind of ink suitable for use with the machine, with full knowledge by the seller of the restriction, and with the expectation that the ink sold would be used in connection with the machine.

In Bauer v. O'Donnell, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150, it was held that, where the transfer of a patented article is full and complete, an attempt to reserve the right to fix the price at which it shall be resold by the vendee is futile. This rule was applied to the sale of a package of Sanatogen, bearing a notice that the package was licensed—

"for sale and use at a price not less than one dollar ($1.00). Any sale in violation of this condition, or use when so sold, will constitute an infringement of our patent * * * under which Sanatogen is manufactured, and all persons so selling or using packages or contents will be liable to injunction and damages. A purchase is an acceptance of this condition. All rights revert to the undersigned in the event of violation."

The Dick Case was distinguished (229 U. S. 15, 33 Sup. Ct. 619 [57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150]) by the consideration that in the latter case merely a qualified title was passed to the purchaser, "giving a right to use the machine only with certain specified supplies," while in the Sanatogen Case the absolute title passed.

It is clear that the jobbers in the instant case were not merely the agents, but were the vendees, of the manufacturer; and the case as to the jobbers is therefore not within decisions, such as Virtue v. Creamery Package Co., 227 U. S. 37, 33 Sup. Ct. 202, 57 L. Ed. 393, which holds that the contract by which the manufacturers of a patented article appoints another, who does not manufacture or sell like articles, his exclusive agent for the output of the factory, does not violate the Sherman Act; nor within cases like Locker v. American Tobacco Co. (C. C. A. 2) 218 Fed. 447, 134 C. C. A. 247, which holds that an agreement whereby a manufacturer made a certain jobber its sole agent in certain territory, on condition that it should not sell the manufacturer's product at more than list prices, did not violate the federal Anti-Trust Law. Nor do the facts present a case for the application of the rule (illustrated by Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, and Whitwell v. Continental Tobacco Co., 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689), that defendants are not required to sell to any one they do not wish.

It is also clear, in our opinion, that the sales by defendants in the instant case were not conditional, as held to be the case in Henry v. Dick, but absolute, within the rule in Bauer v. O'Donnell. Nor are they brought within Bement v. National Harrow Co., supra. Whether the value of the carton is negligible as compared with the value of the contents of the package, and its purchase a mere incident in the contract of sale, or whether, as urged by defendants, the carton has itself a substantial value, is not controlling of the ultimate merits; for its use can surely give no greater right than if it were the only article sold, as

in the Sanatogen Case, nor was it sold for use with subsequent purchases of the food. Defendants were thus given by the patent no warrant to impose upon either jobbers or retailers restrictions limiting the resale price of the product after an absolute sale had once been had by defendants.

We find in United States v. Keystone Watch Case Co. (D. C.) 218 Fed. 502 (recently decided by the Circuit Judges of the Third Circuit), nothing conflicting with this view as respects restrictions upon jobbers; for we assume, as we must, that the case there considered was thought to fall within Bement v. National Harrow Co. and Henry v. Dick, rather than within Bauer v. O'Donnell. The Keystone Case is express authority for the invalidity of the plan as respects restrictions upon retailers. Nor is there in United States v. United Shoe Machinery Co., 222 Fed. 349 (recently decided by the judges sitting in the District Court of Massachusetts), anything opposed to the conclusion we have reached in the instant case. The Shoe Machinery Case relates wholly to restrictions .under leases of patented machines, and thus in no way to absolute sales of patented articles.

Obviously the California decree (Kellogg Toasted Corn Flake Co. v. Weinstein Co., no opinion), in no way, as against the United States, amounts to an adjudication of the validity of defendants' selling plan under the anti-trust act.

It should be unnecessary to add that we see nothing in the prayer of the petition contravening section 2 of the Clayton Act, which forbids discrimination in price on the part of one engaged in interstate commerce; nor that it is immaterial that defendants' selling plan is open to its competitors, or that no attempt to corner the market is shown.

[2] It results from these views that the motion to strike out the paragraph of the petition we have identified as (b) must be denied. As to the paragraph referred to as (c), the motion to strike should likewise be denied; for, while a resort to the cartons as a subterfuge to evade the anti-trust act is not essential to a lack of protection under the patent, the fact of such resort may have some relation to the alleged fact of combination. In any event, it is not so clearly irrelevant as to justify its elimination. It seems entirely clear that defendants' selling plan here in question goes beyond any protection afforded by the patent on the carton, and is in its essential principles violative of the Sherman Act.

[3] But defendants urge that no contract in restraint of trade is consummated, because the notice on the carton does not constitute a valid contract, although counsel say it was believed by the company that such would be its effect when it was put on the package. Defendants invoke Bobbs-Merrill Co. v. Straus, 210 U. S. 339, 350, 28 Sup. Ct. 722, 52 L. Ed. 1086, which holds that the notice printed on the title page of the copyrighted book (to the effect that no dealer is licensed to sell it for less than $1, and that "a sale at a less price will be treated as an infringement of the copyright") was ineffective to secure to the owner of the copyright the protection sought. And it is said that Bauer v. O'Donnell, 229 U. S. at page 16, 33 Sup. Ct. 616, 57 L. Ed. 1041, 50

L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150, holds that the contract there in question could not be enforced or accomplished by notice. But we see nothing in either of these cases lending color to the proposition that a legally effective and enforceable contract in restraint of trade is necessary to a violation of the Sherman Act. Bobbs-Merrill Co. v. Straus and Bauer v. O'Donnell were infringement suits—the one under a copyright, and the other under a patent. The primary question involved in each case was whether complainant's exclusive right to sell, once exercised, continued after the sale to the extent of controlling prices on resale. The pith of the decisions, as distinguishing absolute sales from qualified sales or license agreements, is contained in the sentence (in the Bobbs-Merrill Case at page 350 of 210 U. S., at page 726 of 28 Sup. Ct. [52 L. Ed. 1086]), "There is no claim in this case of contract limitation, nor license agreement controlling the subsequent sales of the book," and (in Bauer v. O'Donnell at page 16 of 229 U. S., at page 619 of 33 Sup. Ct. [57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150]), "There was no transfer of a limited right to use this invention, and to call the sale a license to use is a mere play upon words."

A legally enforceable contract or system of contracts is not required in order to render obnoxious to the Anti-Trust Act a selling plan which unreasonably restrains or monopolizes trade or commerce. The Sherman Act is not aimed alone at contracts, but embraces combination schemes of any and every kind which amount to an undue or unreasonable restraint of trade in interstate commerce, "without regard to the garb in which the acts were clothed." Indirection will not afford escape. American Tobacco Co. Case, 221 U. S. 180, 181, 31 Sup. Ct. 632, 55 L. Ed. 663; Standard Oil Case, 221 U. S. at page 59, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; Northern Securities Co. v. United States, 193 U. S. 197, 331, 24 Sup. Ct. 436, 48 L. Ed. 679; Standard Sanitary Mfg. Co. v. United States, 226 U. S. at page 49, 33 Sup. Ct. 9, 57 L. Ed. 107; United States v. Union Pacific R. R. Co., 226 U. S. 61, 85, 33 Sup. Ct. 53, 57 L. Ed. 124; United States v. Great Lakes Towing Co. (D. C.) 208 Fed. 733, 741.

The petition charges that restraint and monopoly are actually effected. When it is once established that the monopoly of the patent does not continue after the right of sale has once been exercised, the case is to be considered as if there were no patent; and, so considered, the case falls directly within cases such as the Miles Medical Co. and the Park Cases, and others cited in this opinion.

[4] The motion to strike out the paragraph of the petition which, as summarized, we have referred to as (a) must be denied. The prior plan may properly be considered as elucidating the effect and intent of the later plan. United States v. L. S. & M. S. Ry. Co. (D. C.) 203 Fed. 295, 307. We cannot say that the matter sought to be introduced into the petition by way of amendment may not be germane to the ultimate controversy.

It follows, from the views we have expressed, that the entire motion to strike out, as well as the motion to dismiss, presented by defendants, should be denied, and petitioner's motion to amend the bill granted. An order will accordingly be so made.