BOGATA MERCANTILE CO. v. OUTCAULT ADVERTISING CO.   (No. 1528.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 13, 1916.)

1. COMMERCE �köm16—"INTERSTATE COMMERCE" —APPLICATION OF STATE LAWS.

Where a mercantile corporation in Texas signed an order directing an advertising corporation in Chicago to ship certain advertising cuts and type, the transaction was interstate commerce, and not subject to the anti-trust laws of Texas.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 2; Dec. Dig. ⊸16.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. CONTRACTS ⊸22(1) — COUNTERMANDING ORDER AFTER ACCEPTANCE—EFFECT.

Where defendant signed an order, directing plaintiff to ship it certain advertising cuts and type, defendant's acceptance of the order completed the contract between the parties, and the subsequent countermanding of the order did not relieve defendant of the legal consequences of its breach of contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 90, 107; Dec. Dig. ⊸22(1).]

3. CONTRACTS ⊸312(2)—BREACH—EXCLUSIVE PRIVILEGES.

Where a contract by which plaintiff agreed to furnish defendant certain advertising service, consisting of certain advertising cuts and type, provided that defendant was to have the exclusive right to use such service in its city, plaintiff did not break the contract by furnishing another party in the same city a different advertising service.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279½; Dec. Dig. ⊸312(2).]

4. DAMAGES ⊸163(2)—MITIGATION OF DAMAGES—BURDEN OF PROOF.

An order, signed by defendant, for certain advertising cuts and type, provided that defendant was to hold the type and cuts, subject to plaintiff's order, when the contract expired. Defendant countermanded the order, and plaintiff sued for the amount agreed to be paid. There was evidence warranting the inference that the advertising material prepared for defendant could be used only by it, and would have been of no value to any one else, and that it had been fully prepared before plaintiff's receipt of the letter countermanding the order. Held, that the contract was not one for the sale of the material, but for its hire to defendant, and it appeared prima facie that plaintiff's damage was the sum defendant agreed to pay for the use thereof, and the burden was on defendant to show that plaintiff might have pursued a course which would have mitigated the damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 456, 457; Dec. Dig. ⊸163(2).]

Appeal from Red River County Court; George Morrison, Judge.

Action by the Outcault Advertising Company against the Bogata Mercantile Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Appellant, a Texas corporation, carried on its mercantile business at Bogata, in this state. Appellee, an Illinois corporation, carried on its advertising business at Chicago, in that state. September 24, 1913, appellant, through one of appellee's traveling agents in this state, sent it an order as follows:

"Order No. 151.

"To Outcault Advertising Co., 508 S. Dearborn St., Chicago, Ill.:
          "Date Sept. 24, 1913.

"Ship us, at our expense, as per samples shown you, Outcault Service De Luxe to cover a period of one year, beginning Oct. 10, 1913. This service to consist of

"40 Outcault Service De Luxe (4 Column) cuts.

"12 Outcault Service De Luxe (6 Column) cuts.

"One font of type. (9 lbs. in font).

"We agree to pay you net cash monthly, at the rate of $3.50 per week, for one year, we to have exclusive right to use the above Outcault Service De Luxe in our city only, and to hold type and cuts subject to your order when this contract expires.

"Failure to pay any installment when due renders full amount of this contract due.

"This contract cannot be canceled. Ship all at one time if possible.

"Lines of goods we carry,
    "Fill in 'Yes' or 'No.'
"Dry Goods, Yes. Millinery, Yes.
"Ladies' Made Wear, Yes.
"White Goods Sale When? ———.
"Fur Sale When? No.
"Anniversary Sale When? Sept.
"Men's Clothing, Yes.
"Men's Shoes, Yes.
"Ladies' Shoes, Yes.
"Furniture, No. Groceries, Yes.
"Rugs, Yes. Carpets, No.
"M. O. Cuts, Yes.
          "Bogata Mercantile Co.,
          "Per B. C. Peyton.
          "[Write plainly.]
"Town, Bogata.
"State, Tex.
"J. M. Wyatt, Salesman."

The order was received and accepted by appellee on September 27, 1913. On that day appellant telegraphed appellee as follows:

"Withhold shipment adv. matter. Will advise by letter"

—and on the same day wrote appellee as follows:

          "Bogata, Texas, 9/27, 1913.

"Outcault Adv. Co., Chicago.—Gentlemen: We wired you to-day:

"'Withhold shipment of adv. matter. Want to make change.' Which we now confirm.

"Owing to the limited circulation of our little paper here we have decided that your proposition is too large for us. We realize the importance of advertising, and are now, and intend to contribute to adv., yet your proposition is too large for us. Consequently we would ask that you cancel our order. It is quite probable that we will take up your line for the fall of 1914.

    "Yours,      Bogata Mercantile Co.,
             "Per B. C. Peyton."

The telegram was received by appellee the day it was sent, but, as found by the court, after appellee had received and accepted the order. The letter was not received by appellee until September 29, 1913. Appellant's president, Peyton, testified:

"Mr. Wyatt, salesman for the Outcault Advertising Company, came into the store of his own accord and told me about this advertising. I didn't know what the Outcault Service De Luxe was, but Mr. Wyatt explained that they would furnish special cuts and special advertising matter for our store, and that the cuts would have to be fixed with our name and address, and picture cuts specially designed for us would be furnished each week, 52 of them. I understand from Mr. Wyatt that this material would have to be specially prepared for our use after our order was accepted by the company. I don't know how long it would take."

The witness Hadden, who seems to have been the manager of appellee's business at Chicago, testified:

"We kept no record of when the goods in question on this contract were manufactured, and consequently I cannot recall the exact datings and cannot give them and cannot say what of them were manufactured prior to September 27, 1913, and what prior to receipt by our company of letter from the Bogata Mercantile Company dated September 27, 1913."

Part of the material constituting the advertising service appellant contracted for was shipped to it by appellee October 2, 1913, and the remainder thereof October 3, 1913. Appellant declined to receive either shipment, claiming that it had countermanded the order therefor by its telegram and letter of September 27, 1913, and that it therefore was not liable to appellee on the contract, and, further claiming it was not liable because, it alleged: (1) The contract was in violation of the anti-trust law of this state, in that it was for an exclusive right to use appellee's advertising "service de luxe"; and (2) was first breached by appellee, in that it entered into a similar contract with the Bogata Drug Company on or about September 24, 1913. Appellee thereupon commenced this suit in a justice court. On appeal to the county court judgment was rendered in appellee's favor against appellant for $182, the sum sued for, and appellant appealed.

Long & Wortham, of Paris, for appellant. Austin S. Dodd, of Clarksville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The transaction between appellant and appellee evidenced by the contract was interstate commerce, and hence not subject to the anti-trust laws of this state. Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S. W. 791; Eclipse Paint & Mfg. Co. v. New Process Roofing & Supply Co., 55 Tex. Civ. App. 553, 120 S. W. 532; Moroney Hardware Co. v. Goodwin Pottery Co., 120 S. W. 1088; McCall Co. v. Stiff Dry Goods Co., 142 S. W. 661; Koch Vegetable Tea Co. v. Malone, 163 S. W. 663. Therefore the first and second assignments are overruled.

[2] There was evidence to support the find-

ing involved in the judgment that appellee had received and accepted appellant's order at the time it received the latter's telegram of September 27, 1913. If, therefore, that telegram should be construed as one countermanding the order—and we think it should not be so construed—it did not have the effect appellant claims it had. Appellee's acceptance of the order completed the contract between the parties, and countermanding the order thereafterwards did not relieve appellant of the consequences the law attached to its breach of its contract. Therefore the fourth assignment is overruled.

[3] There was testimony to support a finding that the "little druggist advertising service," which appellee bound itself to furnish to the Bogata Drug Company, was not the same as the "service de luxe," which it bound itself to furnish to appellant. Therefore the fifth assignment, in which appellant complains that it appeared that appellee violated its contract with it by entering into a similar one with the Bogata Drug Company, is overruled.

[4] What has been said disposes of all the assignments except the third, in support of which appellant contends that the measure of appellee's damages was not the sum it agreed to pay for the use of the advertising material, as determined by the court, but was the difference between that sum and the value of the material in the condition it was in at the time the order for same was countermanded. The fair inference from the testimony of the witness Hadden, set out in the statement above, was that appellee had done all it was to do to prepare the material for the use appellant was to make of same before it received appellant's letter of September 27, 1913, countermanding the order. The fair inference from the testimony of the witness Peyton was that the material as so prepared could have been used only by appellant for advertising purposes, and therefore was of no value for such purposes to any one else. Therefore, it seems to us, it prima facie appeared that appellee was entitled to recover as damages for the breach by appellant of its contract the sum it had agreed to pay for the use of the material. The contract was not one for the sale of the material, as appellant treats it. It was for the hire thereof to appellant for a period of one year. What appellant was entitled to was the use of the material during that period. What appellee was entitled to was the material at the expiration of that period and the sum appellant agreed to pay for its use to that time. As appellee was entitled to the material after it had been used by appellant during the time agreed upon, it prima facie appeared, we think, that what it lost as a result of appellant's refusal to receive and use the material as agreed upon was the sum appellant undertook by its contract to pay for

the use thereof. It so appearing, as we understand the rule, the burden was on appellant to show, and it did not, that, when it breached the contract appellee might have pursued, but did not, a course which would have mitigated the damage it suffered. Jefferson & N. W. Ry. Co. v. Dresson, 43 Tex. Civ. App. 282, 96 S. W. 63; Porter v. Burkett, 65 Tex. 383.

The judgment is affirmed.