**NEW CENTURY MFG. CO. et al. v. SCHEURER. ***

No. 10615.

Court of Civil Appeals of Texas. Dallas. May 31, 1930.

Rehearing Denied July 12, 1930.

---

*Writ of error granted.

P. D. Crawford and John Davis, both of Dallas, for appellants.

Winfrey & Lane, of Dallas, for appellee.

### VAUGHAN, J.

This suit was instituted by appellee against the New Century Manufacturing Company, Incorporated, and its president, C. L. Lloyd, appellants, to rescind a contract executed on the 4th day of October, 1927, by and between appellee and appellant New Century Manufacturing Company, hereinafter referred to as appellant company, and to recover against appellants the sum of $1,752 paid by appellee, and, in addition thereto, certain special damages alleged to have been sustained by him on account of the execution and attempt on his part to perform the terms of said contract.

Under this contract, appellee purchased of appellant company 730 cases, or 17,520 cans, of paint called Cel-U-Loyd, to be delivered within one year following April 1, 1928. At the time the contract was entered into, on October 4, 1927, appellee paid to appellant company the sum of ten cents per can on said 17,520 cans of paint, amounting to $1,752, and the remainder of the purchase price for said paint was to be paid to said appellant at Dallas, Tex., from month to month during the year following April 1, 1928. Under the terms of said contract, appellee was given the exclusive sales right and was appointed sole distributor in the state of Indiana. The grounds for rescission pleaded by appellee are that appellant Lloyd and his agents made false and fraudulent representations to him, in substance as follows: that said Lloyd personally owned the formula under which the paint called Cel-U-Loyd was manufactured; that said paint would stand 340 degrees of heat before cracking or checking, and that, a lighted cigarette placed on a table painted with said paint, if permitted to smoulder, on the ashes being brushed off, no sign of a place scorched by the heat would be found; that appellant company had a nice business established in the state of Indiana, from which he would at once begin to earn about $150 per month. Further, appellee pleaded as grounds for rescission and recovery of all damages alleged to have been sustained by him that the contract under which appellee deposited with appellant company the $1,752 was a contract prepared by said appellant as its regular form of distributor's contracts; that said contract was yet principally executory, was in violation of the federal (15 USCA § 1 et seq.) and state of Texas Anti-Trust Acts (Rev. St. 1925, art. 7426 et seq.), in that it gave to appellee the exclusive right to sell the appellant company's paint in the state of Indiana, restricted said sales to said state, and provided that appellant should not ship its product, Cel-U-Loyd paint, into said state of Indiana except to appellee or his subagents or dealers, and fixed the price at which said paint should be sold by the dealers in said state. Appellee further alleged that, as soon as he was advised by his attorney that said contract was illegal, being in violation of said anti-trust acts, he repudiated said contract and demanded the return of his deposit, in order that said contract might be rescinded and further violation of said laws avoided. Other allegations were made, to the effect that appellant company promised to furnish appellee stationery, advertising color cards, and equipment, and that said appellant did not ship promptly the paint ordered by appellee from appellant company.

Appellant's answer consisted of, among other things, a general denial and special plea, alleging that appellee breached his contract, and that, by reason thereof, appellants

had the right to retain the $1,752 as liquidated damages, as provided for by the contract. Appellee filed a trial amendment setting out certain items of special damages, and appellants filed a trial amendment to their answer, setting out, among other things, that appellee by his acts and statements ratified the contract of date October 24, 1927, after he had learned that the representations made by appellant Lloyd and his agents, to appellee, were false and untrue.

By the answers made by the jury to the special issues submitted, the following facts were found: That one O. A. Parsons and said Lloyd, as representatives of appellant company, each made the following representations to appellee: That appellant Lloyd personally owned the formula under which Cel-U-Loyd paint was manufactured, and had the exclusive right to manufacture paint under that formula; that said Cel-U-Loyd paint would withstand 340 degrees of heat before cracking or checking; that a lighted cigarette laid on a table painted with Cel-U-Loyd enamel paint and permitted to smoulder away, on the ashes being brushed away, no sign of a place scorched could be found; that appellant company already had a nice business in the state of Indiana from which plaintiff would automatically receive profits averaging about $5 per day, upon his signing a contract taking over that territory; that all of said representations were false, and materially influenced the appellee to execute the contract sought to be rescinded. And further found: That appellant company did not furnish to appellee the advertising, stationery, color cards, and equipment which it promised to do, and did not ship promptly the paint ordered by appellee, under the contract of date October 24, 1927; that appellant did not learn that the inducement pleaded and testified to by him, and offered to him by appellant company to make said contract, were false or untrue before March 1, 1928. On said findings, constituting the verdict of the jury, the court rendered judgment on March 20, 1929, in favor of appellee against appellants, jointly and severally, for the sum of $1,570.36, with interest thereon at the rate of 6 per cent. per annum and all costs of suit.

The grounds for this appeal and the reasons advanced by appellants as to why the judgment rendered should be reversed and rendered in their favor, or in the alternative reversed and cause remanded, are presented by the following propositions:

"No. 1: The appellee, C. W. Scheurer, the plaintiff below, having continued to exercise his rights and privileges, and having continued to operate, under the contract of October 4, 1927, and having otherwise conducted himself with respect to said contract as though it were a subsisting and binding engagement, after he was advised and in-

formed that defendant had been guilty of fraud and misrepresentation in procuring the contract from, and in making the sale of 17520 cans of paint to, him on October 4, 1927, has ratified and confirmed, and has no grounds to seek a rescission of, said contract of October 4, 1927.

"No. 2: The Court of Civil Appeals may set aside the findings of a jury on special issues, and render such judgment as the court below should have rendered under a peremptory instruction to the jury before the case was submitted to the jury on special issues.

No. 3: O. A. Parsons having received as his commissions or compensation for procuring the contract of October 4, 1927, with C. W. Scheurer, seventy-five per cent of the sum of $1752.00, should have been made a party defendant by the plaintiffs."

■ The facts found by the jury, not being without evidence of some probative force in support thereof, are binding upon this court. Therefore we adopt as our findings of fact the findings made by the jury. This adoption is by no means to be taken as indicating that, if we were free to exercise our own judgment, all of the facts found by the jury would have been found by this court upon the evidence before us. However, other material facts, without conflict in the evidence, were established, which, in our opinion, are not only in support of the judgment rendered, but, if same had been duly considered and given proper effect, would have required its rendition, viz. the contract sought to be rescinded contains the following provisions, which will for the convenience of this opinion be numbered in the order herein set out:

"No. 1: In consideration of the purchase of 730 cases (of 24 cans to the case or its equivalent in gallons or 5 gallons) of Cel-U-Loyd, a product of New Century Mfg. Company, of Dallas, Texas, at the agreed and stated price of Eighty-Five cents (85¢) per can for black and One Dollar and Five Cents ($1.05) per can for colors, by second party; said first party does hereby appoint said second party to act as sole distributor in the following territory, to wit: State of Indiana, quota to begin April 1, 1928, 4-1—28.

"No. 2: Second party has hereby made partial payment to party of the first part and to the authorized representative of party of the first part of said annual quantity requirement of $1752.00 Dollars ($1752.00), the receipt of which is hereby acknowledged, and it is understood and agreed that said payment represents and is in payment of Ten Cents (10¢) per can on said quantity, the balance to be paid to the New Century Mfg. Company, Inc., of Dallas, Texas, at its office in Dallas, Dallas County, Texas. Said payment to be made at the aforesaid place at the time of ordering the goods unless other

arrangements are made with New Century Mfg. Co., Inc., of Dallas, Texas.

"No. 3: It is agreed and understood that if party of the second part performs his part of this contract, Ten Cents (10¢) per can of each invoice is to be deducted from the face thereof so that when the full first annual quantity requirements under the terms of this contract have been fulfilled, the full amount of said deposit will have been returned in this manner, but should party of the second part fail to order and pay for the quantity specified herein, and at the time and in the manner specified herein, the said deposited sum and any balance thereof remaining unaccounted for by the terms of this contract, shall be retained by party of the first part as liquidated damages to it to reimburse said party for losses sustained by failure to work the sales territory.

"No. 4: It is agreed and understood that the prices heretofore stated shall be f. o. b. Dallas, Texas, and not subject to discount of any nature, and it is also understood and agreed that these cans of enamel are purchased for the purpose of resale, and that same shall be sold by party of the second part, so as to retail to the ultimate consumer or customer at the price of $2.50 per can for Cel-U-Loyd enamel black, $2.75 for Cel-U-Loyd enamel colors."

"No. 5: It is also understood and agreed in this connection with respect to time and quantity of purchase that party of the second part shall take over and supply all sub-agents and dealers now active in the above specified territory.

"No. 6: It is agreed and understood that party of the first part shall not ship goods into the above named territory except to party of the second part or his sub-agents or dealers, and first party further agrees to fill and ship all orders promptly upon receipt of same.

"No. 7: This contract shall remain in full force and effect forever, so long as there is no default in any of the provisions contained herein."

The contract involved was prepared by appellant company being one of its regular printed forms. The negotiations through correspondence between appellants and appellee in reference to and leading up to the execution of the contract clearly shows that by said contract appellee was to be given the exclusive right to sell appellant company's product, Cel-U-Loyd paint, in the state of Indiana; that he was not to be permitted to sell said product in any other state; that appellant company was not to ship into the state of Indiana any of its product (Cel-U-Loyd) except to appellee or his subagents or dealers therein; that the Cel-U-Loyd paint purchased and contracted to be purchased by appellee from appellant company was for the purpose of resale in the state of Indiana to be put up in quart cans, and that same should be sold by appellee so as to retail to the ultimate consumer or customer at a price of $2.50 per can for Cel-U-Loyd enamel black and $2.75 per can for Cel-U-Loyd enamel colors. In reference to the provision fixing the retail price for which the paint should be sold, appellee testified: "At the time I signed this contract I was not interested in any way in fixing the retail price. I didn't care whether any provision went into the contract as to what price the paint should be sold at at retail, I don't believe I gave that any thought about the retail price of it. Mr. Lane, my attorney, is the one who first advised me that this contract might be in violation of the Federal Anti-Trust Law. I can't give the exact date of the letter. After I found that out I did not try to carry out the contract any more."

■ Under the following authorities, we have reached the conclusion that the contract sought to be rescinded involved interstate commerce, and therefore the anti-trust statute enacted by our federal Congress, known as the Sherman Act (15 USCA § 1 et seq.), must be applied in order to determine the validity of said contract. United States v. Tucker (D. C.) 188 F. 741; Dr. Koch Tea Co. v. Malone (Tex. Civ. App.) 163 S. W. 662; Eclipse Paint Co. v. New Process Roofing Co., 55 Tex. Civ. App. 553, 120 S. W. 532; McCall Co. v. Stiff Dry Goods Co. (Tex. Civ. App.) 142 S. W. 659; Bogata Mercantile Co. v. Outcault Adv. Co. (Tex. Civ. App.) 184 S. W. 333.

■ We are further of the opinion that the provisions of said contract, viz. 1, 4, and 5, supra, clearly attempted to fix the price for which the Cel-U-Loyd paints, sold and contracted to be sold by it in the future to appellee as appellant company's distributor in the state of Indiana, should be sold by dealers in that state, to whom appellee should sell paints purchased and to be purchased by him from appellant company, and are in violation of the Sherman Act as interpreted by and applied in the following cases: United States v. Kellogg Toasted Corn Flake Co. (D. C.) 222 F. 725, Ann. Cas. 1916A, 78; United States v. Keystone Watch Case Co. (D. C.) 218 F. 502; Dr. Miles Medicine Co. v. John D. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502.

■■ We will now address ourselves to the question next in order, viz. What about the position of the parties to this contract? Do they stand in pari delicto to same? The contract was prepared by appellant company and presented to appellee as the character of contract acceptable to it, in the matter of securing salesmen for its paints and making sales thereof to and through any one contracting with it to become ostensibly its dis-

tributing agent. Appellee, before entering into said contract, did not inquire into the legality of its terms, and, as presented to him had the right to assume that appellant company was advised as to the legal effect of the terms of the instrument prepared and tendered by it to appellee for execution, and that appellant company was not presenting to him an illegal instrument. Immediately on being advised by his attorneys that the contract was illegal, he disaffirmed and sought the rescission of same. The contract was by its terms executory and remained to be executed when so disaffirmed as to the purchase of and payment for paint in the future by appellee, and by appellant company in filling orders for paint made by appellee.

We are of the opinion, under the above environments surrounding the origin and execution of said contract, that it cannot be properly said that the parties thereto stand in pari delicto. Section 223, R. C. L. vol. 6, reads in part as follows:

"A distinction has been taken between those illegal contracts both parties to which are equally culpable, and those in which, although both have participated in the illegal act, the guilt rests chiefly upon one. * * * Unless, therefore, the parties are in pari delicto as well as particeps criminis, the courts, although the contract is illegal, will afford relief, where equity requires it, to the more innocent party, even after the contract has been executed. The cases in which the courts will give relief to one of the parties on the ground that he is not in pari delicto form an independent class, entirely distinct from those cases which rest upon a disaffirmance of the contract before it is executed. But, as in the case of the repudiation of an executory illegal contract, the recovery is had not under, but independently of, the contract, the contract being treated as a nullity. * * * The doctrine that the parties to an illegal transaction are not in pari delicto and that the less guilty may recover, is especially applicable where, although the parties concur in the illegal act, some fraud, duress, oppression, imposition, or undue influence is practiced, by one party upon the other so that it appears that the guilt of the latter is subordinate to that of the former. The existence or nonexistence of confidential relations between the parties in fault is an important element in determining whether they are in pari delicto."

■ However, if it should be conceded that the parties were in pari delicto, the contract being illegal, the judgment of the court would have to be sustained, on the ground that appellee was, on account of such illegality, entitled to disaffirm the contract, as it still remained principally executory, for he could not be compelled under the law to continue in the performance of same in hopes that he would in some way reduce, if not altogether prevent, any loss on account of the transaction that he was induced to enter into in violation of the law. This is in harmony with the following rule of law stated in Pomeroy's Equity Jurisprudence, vol. 2 (4th Ed.) § 941, viz.:

"To the foregoing rules there is an important limitation. Even where the contracting parties are in pari delicto, the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this principle, and in compliance with the demands of a high public policy, equity may aid a party equally guilty with his opponent, not only by cancelling and ordering the surrender of an executory agreement, but, even by setting aside an executed contract, conveyance, or transfer, and decreeing the recovery back of money paid or property delivered in performance of the agreement. The cases in which this limitation may apply and the affirmative relief may thus be granted include the class of contracts which are intrinsically contrary to public policy,—contracts in which the illegality itself consists in their opposition to public policy, and any other species of illegal contracts in which, from their particular circumstances, incidental and collateral motives of public policy require relief."

This section is quoted with approval in the case of Prudential Life Ins. Co. v. Pearson (Tex. Civ. App.) 188 S. W. 513, and in principle followed in Mitchell v. Porter (Tex. Civ. App.) 194 S. W. 981.

■ Applying article 1856, R. C. S. 1925, and as interpreted in Denton v. Kansas City Life Ins. Co. (Tex. Civ. App.) 231 S. W. 436; Hudmon v. Foster (Tex. Civ. App.) 210 S. W. 262; Sociedad Union Mexicana La Constructora v. De Orona (Tex. Civ. App.) 288 S. W. 1111, it is the duty of this court to affirm the judgment of the trial court on the ground that the contract sought to be rescinded was in violation of the federal anti-trust statute, said illegality being not only in support of, but fully justified, the judgment rendered, no material error in the record of proceedings being shown that would deny such application being made in support of the trial court's judgment. It is therefore ordered that the judgment of the lower court be, and it is hereby, affirmed.

Affirmed.