**HARRIS et al. v. GURLEY.**

No. 7873.

Circuit Court of Appeals, Fifth Circuit.

Jan. 3, 1936.

William J. Park, of Tyler, Tex., and Jos. W. Bailey, Jr., of Dallas, Tex., for appellants.

Gordon Simpson, of Tyler, Tex., James A. Hall, of Clovis, N. M., and Thos. G. Woolsey, of Clayton, Mo., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a decree in favor of A. L. Gurley against J. T. Harris, J. C. Harris, and L. M. Harris, establishing and then dissolving a partnership among them, fixing the sum due to Gurley on an accounting, appointing a receiver for the partnership assets, and providing for their sale and distribution. The assignments of error complain of each result. The bill alleged the formation in the fall of 1931 among the four named persons of "a co-partnership agreement for the purpose of buying and developing oil land and leases by drilling wells, producing and selling oil, and the drilling and equipping of wells for others engaged in the oil business"; that at first only Gurley and J. T. Harris, the father of J. C. and L. M. Harris, were

included, and what is called the Phillips lease was alone concerned, which they undertook to develop by drilling a well on it for an oil payment, if successful, of $120,000 to be equally divided between the two; that pending the drilling J. T. Harris acquired an oil lease on what is called Block 17, J. C. Harris and L. M. Harris also claiming to be interested, and L. M. Harris was acquiring one known as the De Moss lease; and by mutual agreement all the four persons and the three properties were taken into the partnership, each partner to be interested one-fourth; that the Phillips well was successfully completed October 4, 1931, and wells on the two other leases about December 17, 1931; that the enterprise, except as to the Phillips well to which Gurley and J. T. Harris contributed cash, was financed by selling or borrowing on the anticipated oil; that the Harrises actively managed the business of drilling and producing, since Gurley lived in New Mexico and fell ill; that vast quantities of oil had been taken out, both that allowed by state regulations and much more in excess of them, which was converted and sold by the Harrises in cooperation with others; that, while the legal title to two of the oil properties stood in the name of J. T. Harris and the third in that of L. M. Harris, they were held in trust for the partnership, and Gurley was entitled to an account for his share of the oil after paying partnership debts and expenses; that he had been excluded from the business, been sent but little money from it, and a settlement had been refused, so that he was entitled to a dissolution and an accounting and a receiver to wind up the partnership.

The answer denied the bill generally, and specially denied that Gurley had any interest in the De Moss lease; and denied that as to the others the debts and expenses had been discharged by the receipts; that the Harrises had operated the wells themselves; or that anything was due to Gurley. A partial account of oil taken from the Phillips and Block 17 wells was exhibited. All issues of fact were referred to a master. On exceptions to his report, the judge heard further evidence and made some slight further findings, approved the master's report, and entered a decree establishing "the partnership as is claimed and alleged in the complainant's bill filed herein; that the partnership acquired and owned the interest, rights and titles as alleged in the bill, one-fourth of which is adjudged and decreed to A. L. Gurley in the foregoing provisions of this decree"; that dissolution should be awarded and, the partnership property not being susceptible of fair division, a receiver should be appointed to sell "the right, title and interest held and owned by the partnership." A recovery was awarded Gurley against the Harrises jointly of $70,587.56 on an accounting to date.

Some questions are raised upon the face of the proceedings. On the coming in of the master's report the Harrises claimed that the suit was one at law for the recovery of land and for damages for conversion of oil, and that it should be transferred to the law docket for trial, or at least the issues of title and damages should be submitted to a jury. The motion to this effect was denied and the ruling repeated in the decree. We think it too plain for argument that the proceeding was equitable. The title asserted was an equitable one, to wit, a holding of the legal title to realty by J. T. and L. M. Harris in trust for the benefit of a partnership. The main relief sought is dissolution of the partnership and an account among the partners which is an ancient head of equity jurisdiction. The receivership also sought is relief peculiar to equity. It is true that the decree in one place undertakes to award to Gurley "title and possession" of a one-fourth interest in the oil properties and in another place a writ of possession, but this is foreign to the true purpose of the bill and contradictory to the parts of the decree which appoint the receiver and instruct him to take possession and sell. These expressions should be expunged. Again it appears that the bill prayed to recover in the accounting the highest value of oil between the time of its conversion and the trial, and the master and the court allowed that value on excess oil. This measure of value of converted property is sometimes resorted to at law on the idea that the true owner might have sold his property at that highest value if it had not been taken from him, and the wrongdoer is therefore held to pay it. But it can have no just application in this equitable accounting between partners. The error in claiming and applying it does not convert the case into one at law, but is to be corrected otherwise. There was no error in refusing a jury trial.

■ The bill discloses and the decree recognizes that two of the oil properties were in state receiverships alleged to be friendly, if not collusive, to which proceedings Gurley was not a party. It is argued that on well-recognized principles of comity an existing state receivership cannot be attacked in a federal court, nor could a rival receiver be there appointed. The decree rendered recognizes the state receiverships and the subordination of the federal receivership to those in the state courts, and requires the federal receiver to make due and proper application to the state courts for possession of the properties. This is no breach of comity. A receiver was found necessary to take charge of the partnership assets and to administer them. Some of them are not involved in the state receiverships. Those that are may at any time be relinquished to the federal receiver, or the partnership interest, which is less than the fee, may be by the state receivers paid over to him. His appointment is entirely proper.

■ It is further said, not by timely plea but by way of objection to the decree, that each of the oil properties belongs only in part to the partnership, others holding partial interests as royalties and otherwise, and that these others are indispensable parties to a decree of administration. Barney v. Baltimore, 6 Wall. 280, 18 L.Ed. 825; De La Vega v. League, 64 Tex. 205, 212, and other cases are cited. If this decree sought to partition the leases or to sell them in their entirety, the objection would be good, but the fact that royalty owners and others have undivided interests which are not at all in contest or adverse to the undivided interests standing in the name of J. T. Harris and L. M. Harris is no obstacle to the decree rendered. The decree affects only the interest of the two Harrises, making them to stand as trustees for the partnership and directing a sale of this undivided interest only. A purchaser will stand in the shoes of J. T. Harris and L. M. Harris. The interests of others will not be affected. In like manner no obstacle is presented to the partnership accounting. While the entire production of each well must be investigated to arrive at what the Harrises got for the partnership, only what they are found to have gotten is to be accounted for. What others received or should have received is unadjudicated. All parties indispensable to the decree are before the court.

■ On the merits, we will not disturb the finding of the master and the judge, both of whom heard the oral testimony and could better weigh the credibility of the witnesses, that the alleged partnership existed and that cause arose for its dissolution, and that it covered all the properties in dispute. The Harrises agree that Gurley started them in the oil business by suggesting the drilling of the Phillips well, and that he had a half interest in the oil payment from that well of $120,000, though title to it was put in the name of J. T. Harris. They say that Gurley had an interest in the Block 17 lease together with J. C. Harris and L. M. Harris, though title to this also was put in the name of J. T. Harris. They contend that Gurley had no part or interest in the De Moss lease standing in the name of L. M. Harris, and last procured, and deny that there was any agreement that Harris should procure it for a partnership of the four men in the three properties. They contend that an agreement of that sort would be one for the sale of his realty and void for want of a writing under the statute of frauds (Vernon's Ann.Civ.St.Tex. art. 3995). But in Texas an express trust in realty may sometimes be proved by parol notwithstanding the statute. James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743. If L. M. Harris, having title to realty, agreed in parol to convey to Gurley, J. T. and J. C. Harris interests in it for an unexecuted consideration, the agreement would be unenforceable. But if, before acquiring the title to that realty, he agreed, in consideration of his present admission into a partnership and to a share in its assets, to acquire the realty for the partnership and take title for it, the purchase being financed by the sale of oil interests in the property acquired, the acquisition would belong in equity to the partnership and he would hold in trust for it. Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Brotherton v. Weathersby, 73 Tex. 471, 11 S.W. 505; Watkins v. Watkins (Tex.Civ.App.) 141 S.W. 1047. Gurley's testimony, corroborated by other witnesses and circumstances, is to the latter effect. That of the Harrises, corroborated in part by some other witnesses and circumstances, is to the contrary. The sworn answer of L. M. Harris does not wholly agree with his testimony. After testifying in chief, he failed to submit himself to cross-examination before the master, and had to be subpœnaed before the judge, and was held not to have made a frank disclosure of his oil

operations. In a less degree J. T. Harris and J. C. Harris are subject to criticism. The case presented a square issue of credibility, and we will not overrule those who saw and heard the witnesses testify. It is true that a parol trust must be proven by clear and convincing evidence. King v. Gilleland, 60 Tex. 271, 274; Smalley v. Payne, 62 Tex.Civ.App. 52, 130 S.W. 739; Keiser v. Moss (Tex.Civ.App.) 296 S.W. 963. But that does not mean that the evidence must be without contradiction. If the court is convinced by clear evidence that the trust exists merely disputing the evidence will not defeat the trust.

■ With the accounting we are not content. It plainly appears, at least as to Block 17 and De Moss wells, that much excess oil was run and sold, of which no satisfactory account has been given. The amount of allowable oil and its price are easily arrived at. Since Gurley was absent in New Mexico and the Harrises were on the ground in East Texas actively conducting the drilling, making the financial arrangements, and afterwards receiving the production and making all the settlements, the duty of stating the account to the absent partner is upon them. The cash borrowed and that repaid for the work are not intelligibly stated and vouchered. The books and memoranda concerning the excess oil were not preserved, and denial of rather than account for it is offered. The situation calls for application of the maxim "omnia contra spoliatorem presumuntur." Doubts both as to quantity and price may be resolved against them. But some separate tracing of the actual production of each well and a determination as to which of the Harrises got and should account for it ought to be attempted, for it seems that they did not commingle the oil nor sell it jointly. J. T. Harris, the father, by his conduct and lack of connection with the sales, seems not properly to be condemned to pay by joint decree for all that J. C. and L. M. Harris received.

■■ The master found that during a period of about two and one-half years each well had produced a total of 400,000 barrels. Each was under separate management with different persons interested in the production, and part of the time in separate state receiverships. We see no rational basis for a conclusion that each produced exactly the same, and that a figure far above anything shown by any specific evidence to be the production from any well in the neighborhood should be adopted. The round figure is based only on the testimony of an expert that by reason of the reduction of the pressure in the wells and some knowledge of the field he thought the minimum production on an average for the period might be 100,000 and the maximum 500,000 barrels per well. He admitted that the reduction of pressure would result from production of oil in neighboring wells, and also that his figures were hardly more than a guess. The actual production of no well was shown to corroborate his average figures. The Harrises had legal advice, which afterwards proved correct, that the then regulations were invalid, and that they could legally produce excess oil. But it was produced secretly and at night as opportunity offered, part of the time in spite of state militia on guard, and of the court receivers, and not continuously or regularly. It all appears to have been run through pipe lines, though not through gauging tanks, and thus sold. It would seem that pipe line owners and refineries could furnish better information of what was handled. The testimony of the expert may be sufficient to put the burden of a more accurate explanation on the accounting parties, but we think that justice will be served by another attempt to find the truth rather than by affirming what seems to be a mere surmise as to amount. The master priced the allowable oil at the average market price for such oil, and no complaint in the absence of a better showing can be made of that. The excess oil, which, because surreptitious at the time, brought a much less price in the market, he charged at the highest price paid for such oil during the whole period. Manifestly the oil was sold as it was produced, and not all at the date of highest price. The judge indeed so found. Its production and sale was not the conversion of another's goods. Each partner equally owned all the oil, and had the right to sell it and receive the money, because the business of the partnership as alleged in the bill and established by the decree included the producing and selling of oil. The selling partner did no wrong in selling, but must account to the partnership for what he received. He ought to show the price. If he will not, doubts may be resolved against him, but he should not be charged a price which he could not have gotten.

■ Objection is made to the admission in evidence of an undated letter purporting

to have been written by Gurley to J. T. Harris demanding a written assignment of Gurley's interest in three undescribed wells. The letter was admissible for what it might be worth; it being a question of fact under all the evidence when it was written and whether it referred to the properties in controversy. It was a part of the correspondence between the parties, and, though a self-serving declaration, it tended at least to show the breach between the partners and the necessity for a dissolution and to rebut the contention that Gurley had never before suing claimed an interest in more than two wells.

We reverse so much of the decree as awards possession and a right of possession to Gurley and as awards him a joint recovery of $70,587.56 against the three Harrises, and direct that the accounting only be reopened and such further evidence heard as may be offered by any party, and that a new finding and decree be had touching the accounting among the parties. The cause is therefore remanded for further proceedings in accordance with this opinion, with costs of appeal to the appellants.