**TURNBOW et al. v. LAMB et al.**

**LAMB et al. v. TURNBOW et al.**

**No. 8472.**

Circuit Court of Appeals, Fifth Circuit.

March 2, 1938.

Rehearing Denied March 25, 1938.

**30**

W. T. Saye and J. N. Saye, both of Longview, Tex., · for appellants W. C. Turnbow, and others.

L. L. James, of Tyler, Tex., and Robt. B. Keenan, of Los Angeles, Cal., for appellees Lamb and others.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

Plaintiffs below, Lamb; Olsen, and Keenan, together with W. C. Turnbow Petroleum Corporation, constituted a mining partnership in the operation of an oil and gas lease in Texas, each partner owning a constituent interest in the lease. Turnbow Corporation was the operating partner. The others contributed their pro rata part of the operating expense, and were entitled to their pro rata share of the profits.

A proper accounting was rendered by Turnbow Corporation for oil lawfully produced. Unknown to its copartners, however, and without their consent, Turnbow Corporation produced oil in excess of the amounts allowed by Texas law and production regulations, for which it paid nothing to its copartners.

Lamb instituted this action against Turnbow Corporation, in which Olsen and Keenan later joined, seeking a partition of the leasehold, and an accounting for the complaining partners' pro rata part of the excess oil produced by Turnbow Corpora-

tion. Turnbow Corporation admitted it had produced 59,146 barrels of excess oil, for which it received 25 cents per barrel above the cost of production, of which sum it tendered plaintiffs' proportion into court, but the tender was refused.

The lease covered two parcels, designated as Elder "A" lease and Elder "B" lease. The master who heard the evidence found that 150,000 barrels of excess oil had been produced from "B" lease, and 50,000 barrels from "A" lease. All parties later admitted that no excess oil was produced from "A" lease. The District Judge found that 200,000 barrels were produced from "B" lease alone, and gave judgment to the complaining partners for their pro rata portion thereof at a value of 35 cents per gallon, the highest price paid for excess oil during the production period, Turnbow failing to divulge his actual receipts.

On appeal, Turnbow Corporation contends that the excess oil is contraband to which no right of possession attaches, so that plaintiffs can recover neither the oil nor its value, but are confined to a recovery based upon the depleted value of the leasehold due to the withdrawal of the oil; that recovery for the value of the oil is also precluded because the oil was produced by Turnbow Corporation as a copartner and agent for the plaintiffs; and finally that the finding of any excess production over the admitted 59,146 barrels from "B" lease is unsupported by the evidence and that the valuation of 35 cents per barrel is excessive. By cross-appeal, plaintiffs below contend that they should not have been confined to a recovery on the basis of the value of excess or unlawful oil, but should have been awarded a recovery based on the value of allowable or lawful oil, the latter having a greater market value than the former.

The District Court properly rejected Turnbow Corporation's contention that appellees' recovery is limited to depletion of the leasehold value. There is nothing inherently noxious in the oil produced. Inherently it is a useful and legitimate commodity. Excess oil is illegal only because it is prohibited. As between state and producer, excess oil is subject to forfeiture. This, however, affords no reason why a partner who has deceptively and fraudulently produced excess oil should not account to his innocent copartners for what he has received. Harris v. Gurley, 5 Cir.,

80 F.2d 744. Otherwise, the wrongdoer would be left to enjoy the fruits of his own misdeeds, unless the innocent partners could establish a depletion in the value of the leasehold due to the withdrawal, an undertaking beset with many and varied problems. Cf. Marshall v. Lovell, 8 Cir., 19 F.2d 751; Futch v. Sanger, Tex.Civ. App., 163 S.W. 597; Stewart v. Wright, 8 Cir., 147 F. 321; New Century Co. v. Scheurer, Tex.Civ.App., 30 S.W.2d 388; 13 C.J. 498.

In Miller v. Ammon, 145 U.S. 421, 12 S.Ct. 884, 36 L.Ed. 759, and Waldo v. Gould, 165 Minn. 128, 206 N.W. 46, and like cases cited by Turnbow Corporation, the party seeking to recover was himself an offender. Such is not the case here. The illegal status of the oil was created by the acts of Turnbow Corporation, not by the complaining partners. The latter were without knowledge of Turnbow Corporation's unlawful activities, and neither acquiesced therein nor consented thereto. The Texas proration laws are designed to promote conservation, not to facilitate fraudulent practices. Article 6049c, section 13, Vernon's Civil Stat.Texas, expressly recognizes and preserves to an injured party his cause of action for damages "or other relief" against a violator of the oil production laws. Turnbow Corporation, as a copartner and joint owner of the oil, and for lawful purposes the agent of the other partners, had the right, inter parties, to sell, but he must account to his innocent copartners for what he received. Harris v. Gurley, supra.

On their cross-appeal, plaintiffs below assert that, if the excess oil had been left in the ground and produced in accordance with law, they would have received therefor the market price for lawful oil, which exceeds the selling price of excess oil, and that the accounting to them should be upon a basis of the market price for lawful oil. They rely upon the rule that, where there has been a conversion of property, the measure of damages is the market value of the property at the time of conversion, or, at the option of the defrauded owner, the highest market value at any time between conversion and verdict. They point out that intrinsically the excess oil was worth as much as any other oil, and that, if it brought less as excess or illegal oil, it was due to the illegal activities of Turnbow Corporation, and not to any fault of plaintiffs, and that the unlawful

production by Turnbow Corporation has resulted in a depletion of the supply which would have been ultimately available for lawful production in due course. Burmarsal Co. v. Lake, Tex.Civ.App., 272 S.W. 582; Witliff v. Spreen, 51 Tex.Civ.App. 544, 112 S.W..98; Summers on Oil & Gas, page 618.

These parties, however, were copartners and owned the oil in common at the time of the illegal production and sale. In this respect, this case vitally differs from Sharp v. Beacon Oil & Refining Co., Tex. Civ.App., 108 S.W.2d 870, strongly relied upon by cross-appellants, which holds that a royalty owner may recover on a basis of market value of legal oil against a lessee who produces and converts excess oil. Here, production and sale of the excess oil "was not the conversion of another's goods. Each partner equally owned all the oil, and had the right to sell it and receive the money, because the business of the partnership * * * included the producing and selling of oil. The selling partner did no wrong in selling, but must account to the partnership for what he received." Harris v. Gurley, 8 Cir., 80 F.2d 744, 748. A measure of recovery based upon wrongful conversion is therefore inapposite. The evidence shows that the full allowable quantity of oil was produced and accounted for. Whether or not the ultimate recovery of lawful oil from the lease will be diminished by reason of the present excess production is purely conjectural. Oil in place is capable of ownership, but ownership is qualified by the right of capture by adjoining landowners, so that it remains uncertain whether or not the excess oil in question would have been ultimately available for future production in quantities allowed by the proration regulations.

The evidence supports a finding that 200,000 barrels of excess oil was produced. Turnbow admits that he received 25 cents net for 59,146 barrels, but in his testimony he declined to disclose, upon the ground that it might incriminate him, either the exact amounts sold to the several refineries, or the dates of sale. He testified that the selling price ranged from 15 cents to 35 cents per barrel, and averaged 25 cents. Only the most meager memorandum records were kept, all of which have now been destroyed. Turnbow was either unable or unwilling to disclose the selling price of the various runs of excess oil. It

was his duty to make a full disclosure, failing in which doubts may be resolved against him. His attitude and testimony were evasive, and leave room for doubt as to the accuracy of his admission either as to quantity or net selling price. The evidence of quantity already in the record is much more definite than that regarded ·as insufficient in Harris v. Gurley, supra.

As it appears that Turnbow could have preserved accurate records as to both quantity and price had he so desired, but did not do so, and as such records as were kept have now been destroyed, no good purpose could be served by sending the case back for further evidence upon the accounting. As the absence of evidence is the result of Turnbow's destruction of the memoranda kept, we are not inclined to disturb the unit valuation of 35 cents adopted by the trial judge for which there is a basis in the evidence.

Affirmed.