STRAUS AND STRAUS, COMPOSING THE FIRM OF R. H. MACY & COMPANY, *v.* AMERICAN PUBLISHERS' ASSOCIATION.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 19. Argued March 7, 1913.—Decided December 1, 1913.

One who sets up a Federal statute as giving immunity from a judgment against him, may bring the case here under § 709, Rev. Stat., now § 237 of the Judicial Code, if his claim is denied by the decision of the state court.

No more than the patent statute was the copyright act intended to authorize agreements in unlawful restraint of trade and tending to monopoly in violation of the Sherman Act.

The Sherman Act is broadly designed to reach all combinations in unlawful restraint of trade and tending because of the agreements or combinations entered into to build up and perpetuate monopolies. The act is a limitation of rights which may be pushed to evil consequences and may, therefore, be restrained. *Standard Sanitary Mfg. Co.* v. *United States*, 226 U. S. 20.

As the agreement involved in this case went beyond any fair and legal means to protect trade and prices, practically prohibited the parties thereto from selling to those it condemned, affected commerce between the States, it was manifestly illegal under the Sherman Act, and was not justified as to copyrighted books under any protection afforded by the copyright act.

Where the state court dismissed the bill solely on the ground that defendant's acts were not within the denunciation of the Federal statute on which plaintiff relied, the judgment will be reversed on

that ground and it is unnecessary for this court to decide other Federal questions involved.

*Quære*, and not now discussed or decided, whether an original action can be maintained in the state courts for injunction and damages under the Sherman Act.

Judgment based on 199 N. Y. 548, reversed.

THE facts, which involve the construction of the Sherman Anti-trust Act and its application to agreements regarding the sale of copyrighted books, are stated in the opinion.

*Mr. Wallace Macfarlane*, with whom *Mr. Edmond E. Wise* was on the brief, for plaintiffs in error:

This court has jurisdiction to review the judgment of the state court, because that judgment decided against the plaintiffs in error a Federal right specifically set up and asserted by them in the state courts, which if decided in their favor would have required a contrary judgment.

The state court erred in holding that the agreements, resolutions or combinations set forth in the complaint which were entered into by the defendants were not unlawful, illegal and contrary to the statutes of the United States, and more particularly of the statute passed on July 2, 1890, known as "An Act to protect trade and commerce against unlawful restraints and monopolies," in so far as concerns copyrighted books.

The agreements obviously restrain trade. They have been entered into by seventy-five per cent. of the publishers of the United States and by a large majority of the booksellers of the United States. They affect interstate commerce as well as intrastate trade and operate to restrain trade or commerce among the several States. *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211; *Swift & Co.* v. *United States*, 196 U. S. 375.

The Court of Appeals (177 N. Y. 473) in fact held that so far as uncopyrighted books were concerned, the com-

bination was in restraint of trade, and it requires little reasoning to show that it contains every element of illegality as to effect, intent, and method of execution condemned by this court in the latest, as well as many of the previous decisions. *American Tobacco Co.* v. *United States*, 221 U. S. 106; *Standard Oil Co.* v. *United States*, 221 U. S. 1; *Montague* v. *Lowry*, 193 U. S. 38; *Swift & Co.* v. *United States*, 196 U. S. 375; *Standard Sanitary Mfg. Co.* v. *United States*, 226 U. S. 20; *Dr. Miles Medical Co.* v. *John D. Parks & Sons*, 220 U. S. 373; *United States* v. *Joint Traffic Asso.*, 171 U. S. 505; *United States* v. *Freight Asso.*, 166 U. S. 290; *Addyston P. & S. Co.* v. *United States*, 175 U. S. 211; *Northern Securities Co.* v. *United States*, 193 U. S. 197.

For cases in which combinations similar to this have been condemned by the courts, see *Cohen* v. *Berlin & Jones*, 166 N. Y. 392; *Cummings* v. *Union Bluestone Co.*, 164 N. Y. 401; *People* v. *Milk Exchange*, 145 N. Y. 267; *Judd* v. *Harrington*, 139 N. Y. 105; *People* v. *Sheldon*, 139 N. Y. 251; *Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558; *In re Jacobs*, 98 N. Y. 98; *People* v. *Gilson*, 109 N. Y. 389; *Brown* v. *Jacob Pharmacy*, 41 S. E. Rep. 553 (Georgia); *Moore* v. *Bennett* (Ill., 1892), 15 L. R. A. 361; *People* v. *Chicago Live Stock Assn.*, 170 Illinois, 556; *Richardson* v. *Guhl*, 77 Michigan, 632; *State* v. *Nebraska Distillery Co.*, 29 Nebraska, 200; *Howardson* v. *Y. & L. Co.*, 111 Wisconsin, 445; *Morris Run Coal Co.* v. *Bartley Coal Co.*, 61 Pa. St. 173; *Bower* v. *Trade Council*, 53 N. J. Eq. 301; *Jackson* v. *Stanfield*, 137 Indiana, 592.

*Mr. Stephen H. Olin* and *Mr. John G. Milburn* for defendants in error:

This court has no jurisdiction to review the decision of the state courts giving effect to the copyright statute.

The plaintiffs in error did not specially set up or claim

any right, privilege or immunity under the Federal Anti-trust Act, as to which there was a decision adverse to the right or privilege claimed.

The complaint complained that the agreement therein recited was unlawful under the state laws and the Federal statute. The decision was that the agreement was unlawful under the state statute. Hence, the decision was not against the right claimed, although the court did not rest it upon the Federal statute.

Furthermore, the right claimed under the Federal statute was not specially set up or claimed, since in the claim as made was involved a non-Federal claim made under the public policy and statutes of New York. *Pierce* v. *Somerset Ry.*, 171 U. S. 641; *Allen* v. *Arguimbau*, 198 U. S. 149; *Dibble* v. *Bellingham Bay Land Co.*, 163 U. S. 63; *Klinger* v. *Missouri*, 13 Wall. 257; *Eustis* v. *Bolles*, 150 U. S. 361, 366; *Johnson* v. *Risk*, 137 U. S. 300.

No right under the Federal Anti-trust Act in relation to copyrighted books was specially set up or claimed by the plaintiffs at any time before the filing of the assignments of error.

As the record shows that no Federal question was at any time specially presented to the appellate courts by the plaintiffs, so the opinions show that no such question as is raised by the assignments of error was in fact considered or decided on either of the appeals. 177 N. Y. 473; 193 N. Y. 496; 194 N. Y. 538; 199 N. Y. 548.

This court has therefore no jurisdiction to examine the alleged errors assigned., *Klinger* v. *Missouri*, 13 Wall. 257; *De Saussure* v. *Gaillard*, 127 U. S. 216; *Johnson* v. *Risk*, 137 U. S. 300; *Bachtel* v. *Wilson*, 204 U. S. 36, 41; *Ark. So. R. R.* v. *German Bank*, 207 U. S. 271; *Leathe* v. *Thomas*, 207 U. S. 93; *Rogers* v. *Jones*, 214 U. S. 196; *Sauer* v. *New York*, 206 U. S. 536, 546; *Murdock* v. *Memphis*, 20 Wall. 590; *Hale* v. *Akers*, 132 U. S. 554; *Eustis* v. *Bolles*, 150 U. S. 361; *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S.

112; *Pierce* v. *Somerset Railway*, 171 U. S. 641; *Appleby* v. *Buffalo*, 221 U. S. 524.

No inference of the denial of the Federal question raised in the assignments of error can be based upon the decision itself, because it might have rested upon any of several other grounds each of which is broad enough to sustain it.

The Sherman Act is not applicable in such an action as this when brought in the state court.

Agreements creating a monoply in restraint of trade and against public policy, though invalid and unenforcible, are not illegal in the sense of giving a right of action to third persons for an injury sustained, nor as affording ground for an injunction against threatened injury. *National Fireproofing Co.* v. *Mason Builders' Assn.*, 169 Fed. Rep. 259; *Penn. R. R. Co.* v. *Hughes*, 191 U. S. 477; *Locker* v. *American Tobacco Co.*, 121 App. Div. 443, 449, affd. 195 N. Y. 565; *Missouri* v. *Associated Press*, 51 L. R. A. 170.

No case has been found in which a state court has allowed a recovery based upon the Sherman Act or on account of its violation.

In a suit for an injunction not brought by the Attorney General, there can be no recovery on the ground that a combination is illegal under the Federal Anti-trust Act. *Nat. Fireproofing Co.* v. *Mason Builders' Assn.*, 169 Fed. Rep. 259, 263; *Pidcock* v. *Harrington*, 64 Fed. Rep. 821; *Greer, Mills & Co.* v. *Stoller*, 77 Fed. Rep. 1.

The plaintiffs have not come into a court of equity with clean hands, nor does it appear that the plaintiffs have suffered any actionable damage whatever from the acts complained of.

Notwithstanding the Federal Anti-trust Act it is lawful for a publisher when selling, at wholesale, books copyrighted by him, to fix, by agreement with the purchasing bookseller, the retail price at which such copyrighted books shall be sold during a period of one year. Such is the rule

in patent cases. *Bement* v. *Nat. Harrow Co.*, 186 U. S. 70, 91, 92, 93; *Henry* v. *Dick Co.*, 224 U. S. 1, 31, 39, 43, 44, 45, 46, 47; *Victor Talking Mach. Co.* v. *The Fair*, 123 Fed. Rep. 424; *Nat. Phonograph Co.* v. *Schlegel*, 128 Fed. Rep. 733, 735; Robinson on Patents, § 824; *Edison Phonograph Co.* v. *Kaufmann*, 105 Fed. Rep. 960; *Park & Sons* v. *Hartmann*, 153 Fed. Rep. 24; *Edison Phonograph Co.* v. *Pike*, 116 Fed. Rep. 863.

This rule applies also in copyright cases.

Certain uses of the copyrighted book or article by a purchaser have been held to be lawful; but all other uses are within the absolute and exclusive control of the owner of the copyright. Drone on Copyright, 387–399, 433, 467.

The same rule should be applied to a copyright as to a patent for a machine. *Story* v. *Holcombe*, 4 McLean, 306.

The courts have followed the patent cases whenever applicable. Macgillivray on Copyright, 281, 282; *Callaghan* v. *Myers*, 128 U. S. 617; *Reed* v. *Holliday*, 19 Fed. Rep. 325; *List Pub. Co.* v. *Keller*, 30 Fed. Rep. 772; *Gilmore* v. *Anderson*, 38 Fed. Rep. 846; *Harper Bros.* v. *Donohue*, 144 Fed. Rep. 491, 492; *West Pub. Co.* v. *Lawyers' Co-op. Pub. Co.*, 64 Fed. Rep. 360; *Harper* v. *Ranous*, 67 Fed. Rep. 904; *Daly* v. *Webster*, 56 Fed. Rep. 483, 488; *Ogilvie* v. *Merriam Co.*, 149 Fed. Rep. 858, 862; *Doan* v. *Am. Book Co.*, 105 Fed. Rep. 772, 776.

The owner of the copyright may make a valid contract with his publishers as to the selling price of copies of the copyrighted article. Drone on Copyright, 365; *Murphy* v. *Christian Press Assn.*, 38 App. Div. 426, 430; *Parton* v. *Prang*, 3 Cliff. 537; *Hudson* v. *Patten*, 1 Root (Conn.), 133; *Aronson* v. *Baker*, 43 N. J. Eq. 365, 369; *Park* v. *Natl. Wholesale Druggists' Assn.*, 175 N. Y. 1, 19.

An owner of copyright is not, on the sale of a copyrighted article, necessarily divested of all his statutory

rights in regard to it, but only of such rights as he conveys. *Cooper* v. *Stephens* (1895), 1 Ch. 567; *Marshall & Co., Ltd.,* v. *Bull, Ltd.,* 85 Law Times Rep. 77, 82; *Patterson* v. *Ogilvie,* 119 Fed. Rep. 453; *Stevens* v. *Gladding,* 17 How. 447.

The views of defendant in error are sustained in *Dr. Miles Medical Co.* v. *Park Sons & Co.,* 220 U. S. 373, 404; *Henry* v. *Dick Co.,* 224 U. S. 1, 43–47.

The agreement involved was not in violation of the Sherman Act.

While it may be that all publishers could not lawfully agree to fix a price upon all copyrighted books, *Murphy* v. *Christian Press Assn.,* 38 App. Div. 426, or enter into a combination to restrict the output and destroy competition, *Standard Sanitary Mfg. Co.* v. *United States,* 226 U. S. 20, on the other hand any or all of them might make rules for regulating the conduct of their business among themselves and with the public, and providing for just and fair dealings among them, provided the regulations were made for the legitimate purpose of reasonably forwarding personal interest and developing trade, without intent to wrong the general public or limit the right of individuals, or restrain the free flow of commerce, or bring about the evils, such as enhancement of prices, which are considered to be against public policy. *Anderson* v. *United States,* 171 U. S. 604; *Hopkins* v. *United States,* 171 U. S. 578; *Standard Oil Co.* v. *United States,* 221 U. S. 1, 58; *Straus* v. *American Publishers' Assn.,* 177 N. Y. 473, 477, 488, 489, 490, 491; *Park & Sons Co.* v. *Nat. Druggists Assn.,* 175 N. Y. 1.

Regulating trade is not restraining trade. There is a well recognized difference. *United States* v. *Reardon,* 191 Fed. Rep. 454, 458; *Fonotipia, Ltd.,* v. *Bradley,* 171 Fed. Rep. 951, 959; *Heim* v. *N. Y. Exchange,* 64 Misc. Rep. 529, 531; *Am. Live Stock Com. Co.* v. *Chicago Live Stock Exchange,* 143 Illinois, 210.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error to review a judgment of the Supreme Court of the State of New York, rendered on remittitur from the Court of Appeals, refusing to grant to the plaintiffs in error an injunction restraining any interference with their purchase and sale of copyrighted books and damages, the defendants acting under an agreement alleged to be violative of the laws of New York and the Sherman Anti-trust Act (act of July 2, 1890, 26 Stat. 209, c. 647).

The suit originated in a bill filed in the Supreme Court of the State of New York for New York County, in which the plaintiffs in error alleged that they conducted a department store in New York City, a large department of which was devoted to books, magazines and pamphlets; that, because of their methods of business, they had been able to undersell other retail book stores; that the defendants in error, through the American Publishers' Association and the American Booksellers' Association, and by means of resolutions and agreements, with the cooperation of the Associations and their members and by the use of various practices and methods, to the end that books should be sold to the booksellers only who would maintain the retail price upon copyrighted books, agreed by them to be published at net prices, for one year and who would not sell books to anyone who would cut such prices, had restrained and prevented competition in the State of New York and throughout all of the United States in the supply and price of books, and that the business of the plaintiffs in error had been seriously affected, and they prayed that the combination and agreements be declared unlawful and that defendants be enjoined from acting thereunder or accomplishing the purposes thereof, and for damages. A demurrer having been interposed to the complaint and sustained by the court at Special Term and the

interlocutory judgment there entered having been reversed upon appeal to the Appellate Division of the First Department, the Court of Appeals, permission having been granted to appeal and the question certified, affirmed the decision and held that, so far as the bill related to copyrighted books, the demurrer was good, but that as to uncopyrighted books the complaint stated facts sufficient to constitute a cause of action. 177 N. Y. 473.

Amended answers having been filed, upon trial to the court without a jury, the court made findings of fact from which it appears that the material allegations of the complaint are true, as above set forth, and further that about April 1, 1904, and after the decision of the Court of Appeals reported in 177 N. Y. the Associations amended their resolutions and agreements so as to restrict the application and operation thereof to copyrighted books only; that about January 19, 1907, the Publishers' Association revoked all its former resolutions and adopted a new resolution, but that the Associations had continued the same course as to copyrighted books as was followed before the passage of such resolution. The court concluded that the resolutions and agreements, so far as they related to uncopyrighted books, were unlawful and contrary to the laws of New York, and to that extent granted relief by way of injunction and damages, but held that as to copyrighted books the agreements, resolutions and acts of the defendants were not unlawful, and entered an interlocutory judgment accordingly; and in its opinion the court stated that the former decision of the Court of Appeals in the case (177 N. Y. 473) was controlling. Plaintiffs in error excepted to the conclusions of law made by the court restricting the illegality of the combinations to uncopyrighted books and requested that certain conclusions be made and excepted to the refusal to find the conclusions submitted by them.

From that part of the interlocutory judgment denying

relief as to copyrighted books the plaintiffs in error appealed to the Appellate Division, which, also upon the authority of 177 N. Y. 473, affirmed the interlocutory judgment, and judgment of affirmance was entered in the Supreme Court; and, with permission, an appeal was taken to the Court of Appeals which answered in the negative the question certified by the Appellate Division as to whether plaintiffs in error, in so far as copyrighted books were concerned, were entitled to relief, adhering to its previous decision (177 N. Y. 473). 193 N. Y. 496. Judgment was so entered on remittitur to the Supreme Court. The report of the referee appointed to ascertain the amount of the damages sustained by the plaintiffs in error in the sale of uncopyrighted books having been filed and approved, final judgment was entered in the Supreme Court granting an injunction and damages as to uncopyrighted books only, and upon appeal to the Court of Appeals that court affirmed the final judgment (199 N. Y. 548) and remitted the case to the Supreme Court. Judgment on remittitur was accordingly entered, and this writ of error sued out to review that judgment.

In this court a motion was made to dismiss the writ of error upon the ground that it presents no Federal question so saved and brought here as to permit a review of such question. When the case was before the Court of Appeals, upon demurrer to the complaint (177 N. Y. 473), that court held that the agreement, as to copyrighted books, was not illegal, because of the monopoly granted to the holder of a copyright under the statutes of the United States. The court held that the agreement, as to uncopyrighted books, was, however, in violation of the so-called anti-trust law of New York, chapter 690, Laws of 1899, making contracts, agreements, etc., creating monopoly or restraining or preventing competition in the supply or price of articles or commodities void as against public policy. Subsequently the agreement was modified so as

to apply to copyrighted books only and findings of fact were specifically made upon which the case again went to the Court of Appeals of New York upon the certified question: "Are the plaintiffs, under the findings of fact contained in the decision in this case, entitled, in so far as copyrighted books are concerned, to the relief demanded in the complaint, or to any relief as against the defendants in this case?" Upon the record the Court of Appeals by a majority adhered to its former decision, notwithstanding the decision of *Bobbs-Merrill Co.* v. *Straus*, 210 U. S. 339, which had in the meantime been decided by this court, and held that, as the object of the copyright and patent statutes was to give monopolies, contracts made by the owners of copyrights to secure the fullest protection in the enjoyment of their monopolies would not be condemned by the courts as being in unlawful restraint of trade, at least not until the Supreme Court of the United States had pronounced differently (193 N. Y. 496). Three of the justices dissented upon the ground that the agreement was clearly one in restraint of trade, as they had theretofore held, and that the decision of this court in *Bobbs-Merrill Co.* v. *Straus, supra,* had so construed the copyright act as to limit the right of a copyright holder to the sale of copyrighted works and did not have the effect to protect such monopolistic agreements as were shown in the present case. As to uncopyrighted books the views theretofore expressed were maintained by the court and upon remittitur judgment was entered granting injunction and damages as to such books.

An inspection of the record shows that before the case went before the Court of Appeals for decision the second time upon the facts found in the lower court the following conclusions of law were specifically requested covering the effect of the Sherman Anti-trust Act as to copyrighted books dealt with in interstate commerce, as was found to be established by the facts in the present case:

"VII. That such resolutions and agreements purporting to restrict the effect of the combination, arrangement or contracts to copyrighted books likewise affect an article of interstate commerce and was unlawful and contrary to the aforementioned statute [the Sherman Anti-trust Act] of the United States as being in restraint of interstate commerce and tending to create a monopoly.

"IX. That the owners of several separate copyrights are not empowered to enter into any contract or agreement or combination between themselves concerning the supply and price of books published under their separate copyrights which would be unlawful and contrary to the statutes of the United States against combinations in restraint of trade or for the purpose of creating a monopoly, if entered into with reference to the supply or price of uncopyrighted books."

It is thus apparent that, when the defendants below set up the copyright statute of the United States as an authority for the agreement of the character here in question, the plaintiffs contended that such agreement was not only beyond the authority conferred in the copyright act but was in violation of the terms of the Sherman Anti-trust Law, making illegal combinations in restraint of trade and tending to monopoly. This contention was in terms denied by the lower court and the decision upon the facts went to the Court of Appeals with the result which we have stated. The contention thus made as to the effect of the Sherman Anti-trust Act when read in connection with the copyright act of the United States presented a question of a Federal character to the state courts, which claim of Federal right was necessarily denied in the decision of the Court of Appeals, affirming the judgment of the court below. One who sets up a Federal statute as giving immunity from a judgment against him, which claim is denied by the decision of a state court, may bring the case here for review under § 709 of the Revised Stat-

utes, now § 237 of the Judicial Code. *Nutt* v. *Knut*, 200 U. S. 12; *St. Louis & Iron Mountain Ry.* v. *Taylor*, 210 U. S. 281; *St. Louis & Iron Mountain Ry.* v. *McWhirter*, 229 U. S. 265. The motion to dismiss for want of jurisdiction must therefore be overruled.

This court, in the case of *Bobbs-Merrill Co.* v. *Straus, supra*, held that the copyright act did not grant the right to fix a limitation upon prices of books at subsequent sales to purchasers from retailers by notice of price limitation inscribed upon the book, and, construing the copyright act, held that in conferring the right to vend a book it did not intend to confer upon the holder of the copyright any further right after he had exercised the right to vend secured to him by the act.

In the case of *Standard Sanitary Mfg. Co.* v. *United States*, 226 U. S. 20, this court had under consideration the effect of the patent statute upon agreements found to be unlawful under the Sherman Law, and the agreements condemned were held not to be protected as within the patent monopoly conferred by the statute. Replying to the contention as to the protection which the patent law gave to enter into such agreements, this court said (p. 49):

"Rights conferred by patents are indeed very definite and extensive, but they do not give any more than other rights an universal license against positive prohibitions. The Sherman law is a limitation of rights—rights which may be pushed to evil consequences and therefore restrained."

So, in the present case, it cannot be successfully contended that the monopoly of a copyright is in this respect any more extensive than that secured under the patent law. No more than the patent statute was the copyright act intended to authorize agreements in unlawful restraint of trade and tending to monopoly, in violation of the specific terms of the Sherman Law, which is broadly de-

signed to reach all combinations in unlawful restraint of trade and tending because of the agreements or combinations entered into to build up and perpetuate monopolies.

From the finding of facts upon which the court certified the question decided to the Court of Appeals, after the attempted reformation in view of the first decision of that court it appears that the Publishers' Association was composed of probably seventy-five per cent. of the publishers of copyrighted and uncopyrighted books in the United States and that the Booksellers' Association included ɛ majority of the booksellers throughout the United States; that the Associations adopted resolutions and made agreements obligating their members to sell copyrighted books only to those who would maintain the retail price on net copyrighted books, and, to that end, that the Associations combined and coöperated with the effect that competition in copyrighted books at retail was almost completely destroyed. The findings further show that the Associations employed various methods of ascertaining whether prices of net copyrighted books were cut and whether there was competition in the sale thereof at retail, and issued cut-off lists, so-called, directing the discontinuance of the sale of copyrighted books to offenders, and that the plaintiffs in error, who had failed to maintain net prices upon copyrighted books, had been put upon the cut-off lists and were unable to secure a supply of such books in the ordinary course of business. It further appears that in some instances dealers who had supplied the plaintiffs in error were wholly ruined and driven out of business; that the Booksellers' Association widely circulated the names of such dealers and warned others to avoid their fate, and that various circulars were issued to the trade at large by both Associations warning all persons against dealing with the plaintiffs in error or other so-called price-cutters; that after the reformation of the resolutions and agreements in 1904 the Associations and

their members continued the same methods as to ascertaining the supply of copyrighted books of the plaintiffs in error, as to cut-off lists and circulars to the trade, and that, although in 1907 the resolution of the Publishers' Association was modified so that the "agreement" became a "recommendation," the cut-off lists were still issued, with plaintiff's name thereon and that the dealers still refused to supply plaintiffs in error with books of any kind. And it also appears from the finding of facts that the members of the Associations resided in and carried on the business of selling books in many different States and purchased books from persons in many States other than the one in which they resided and did business; and that the rules, regulations and agreements of the Associations were enforced against all publishers and dealers in books throughout the United States, whether they were members of either Association or not and whether they purchased books in one State for transportation and delivery in another or for delivery in the State where purchased.

We agree with the Court of Appeals in its characterization of the agreement involved in this case, about which there seems to have been no difference of opinion, except as to the supposed protection of the copyright act. It manifestly went beyond any fair and legal agreement to protect prices and trade as among the parties thereto and prevented, as the Court of Appeals said, when dealing with uncopyrighted books, the sale of books of any kind, at any price, to those who were condemned by the terms of the agreement and with whom dealings were practically prohibited. We conclude, therefore, that the Court of Appeals erred in holding that the agreement was justified by the copyright act, and was not within the denunciation of the Sherman Act, and in denying, for that reason alone, the right of the plaintiffs in error to recover under the state act as to copyrighted books.

This view of the case renders it unnecessary to decide whether an original action can be maintained in the state courts seeking an injunction and to recover damages under the Sherman Law.

As the Federal question, made in the manner which we have stated, was in our view wrongly decided and such decision was the basis of the judgment in the state court, the judgment of that court must be reversed. *Murdock* v. *City of Memphis*, 20 Wall. 590, 634.

> *Judgment reversed and case remanded to the state court whence it came for further proceedings not inconsistent with this opinion.*