### STEWART–WARNER CORPORATION v. STALEY.

### No. 3342.

District Court, W. D. Pennsylvania.
Nov. 21, 1941.

David Bollinger and Smith, Buchanan & Ingersoll, all of Pittsburgh, Pa., and Williams, Bradbury & Hinkle, Warren C. Horton and A. C. Ahlberg, all of Chicago, Ill., for plaintiff.

Elder W. Marshall and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., and Leonard L. Kalish, of Philadelphia, Pa., for defendant.

SCHOONMAKER, District Judge.

The original defendant in this case, Universal Lubricating Systems, Inc., filed a motion on April 1, 1941, for leave to file an amended counterclaim herein. On May 8, 1941, the plaintiff filed a motion to strike the defendant's amended counterclaim, and to dismiss it. The case then came on to be heard on June 9, 1941, at which time this court heard the motion to file this amended counterclaim, and allowed it to be filed nunc pro tunc as of April 1, 1941, hearing the case then on plaintiff's motion to strike and to dismiss this amended counterclaim.

In the meantime, the defendant, Universal Lubricating Systems, Inc., became involved in reorganization proceedings in this court, and its trustee, Austin L. Staley, was substituted party defendant.

The defendant's counterclaim in this case has been the subject of much controversy. First, plaintiff moved to dismiss the counterclaim for want of jurisdiction, and the defendant moved to amend its counterclaim. This court then denied the plaintiff's motion to dismiss for want of jurisdiction and allowed the defendant's motion to amend its counterclaim. The plaintiff then moved to dismiss the amended counterclaim, on the ground that it failed to state a cause of action on which relief might be granted; and in case this motion was denied, that the defendant be required to file a bill of particulars.

This matter came on then to be heard on November 7, 1940, when counsel asked leave to submit briefs, which was granted. Thereafter, on January 12, 1941, defendant voluntarily filed a bill of particulars. Then, on April 1, 1941, briefs were submitted; and at the same time, defendant filed its motion for leave to file a new amended counterclaim. We now have the case again on plaintiff's motion to dismiss this new amended counterclaim for failure to state a cause of action on which relief might be granted, which was heard on June 9, 1941; and the parties were allowed until July 1, 1941 to file further briefs.

The amended counterclaim of April 1, 1941, charges the plaintiff with violations of the Sherman Anti-Trust Act, 15 U.S.C. A. §§ 1-7, 15 note, and the Clayton Act, 15 U.S.C.A. § 12 et seq., in regard to lubricating equipment. It contains six counts or causes of action. All the counts charge that the plaintiff and the defendant were, and are, engaged in interstate and foreign trade and commerce in lubricating equipment, and have competed with each other therein. Count 1 (drawn under Sections 1 and 15 of Title 15 U.S.C.A.) charges in substance that plaintiff conspired with certain persons, firms, and corporations named therein, to restrain interstate and foreign trade and commerce in lubricating equipment, including both patented, unpatented, and unpatentable equipment, which said conspiracy and the successive series of continuing acts of the plaintiff were, and are, a part of a general and continuing conspiracy to restrain interstate and foreign trade and commerce therein.

This amended counterclaim further charges that in pursuance of said conspiracy, plaintiff: (1) acquired ownership or control of many hundreds of patents in lubricating equipment, constituting the preponderant majority of all unexpired patents in that field, not for the purpose of commercializing the devices covered by said patents, but for the purpose of overwhelming the industry with a constant threat of patent litigation and thereby discouraging the purchase of competitive equipment; (2) asserted many of such patents in a scope not warranted by the patents and contrary to the patent laws of the United States, for the purpose of demoralizing trade in such lubricating equipment; (3) paid various defendants in patent suits brought by plaintiff, substantial sums of money and other valuable considerations not to defend such suits or to forego further appeals therein, in order to obtain favorable judgments therein which might be cited as precedents in other patent litigation, without apprising the court of the payment made by the plaintiff in such suits to obtain such judgments; (4) published and circulated among the trade, on a large scale, decisions of courts favorable to its patents, including decisions in cases in which plaintiff paid defendant not to defend, or to forego appeal; (5) published and circularized among the trade various, many, and sundry threats of infringement suits; (6) misrepresented to the public the scope of its patents and the scope and effect of the decisions of the courts based on said patents, all to the effect that the purchasing public has been intimidated thereby; (7) falsely marked its lubricating equipment under patents not applicable thereto, for the purpose of deceiving the public and intimidating the purchasing public from buying competitive equipment; (8) made sales and contracts for sale of its lubricating equipment on condition that the purchaser should not use or deal in products of competitors, thereby tending to create a monopoly in lubricating equipment; (9) purchased, or acquired control of the business of competitive manufacturers of lubricating equipment, who controlled a substantial proportion of national production of lubricating equipment, with the result that plaintiff acquired a commercial monopoly in such equipment; (10) organized and put in the field the Aro Equipment Corporation as an independent competing manufacturer of lubricating equipment, when, as a matter of fact, such company was not a competing company at all, but was owned and controlled by the plaintiff; (11) entered into contracts with owners of other patents either clearly invalid or not infringed, to enter suits against defendant,—all for the purpose of embarrassing defendant, putting it to great expense, or destroying its financial structure, intimidating the trade, and deterring the purchasing public from buying defendant's equipment; (11) instituted, and caused to be instituted by others, unwarranted suits for alleged patent infringements against customers of defendant on defendant's equipment, which had theretofore been exculpated by the court in earlier suits brought by plaintiff against defendant; (12) circulated, and caused others to circulate false rumors concerning defendant, representing that defendant's equipment was unsafe to handle because of patent infringement, and

that defendant would soon be put out of business; (13) unfairly reduced prices on some of its equipment to a point below the normal cost of production of such products for the purpose of forcing defendant and other competitors to discontinue the competitive manufacture of said products.

· This count then gives a list of the known persons, firms and corporations with whom the plaintiff so conspired; a partial list of contracts made by plaintiff in restraint of interstate and foreign trade; a list of the patents owned or under control of plaintiff; a list of corporations to whom plaintiff paid money for consent decrees; a list of circulars and publications sent out by plaintiff to the lubricating equipment trade; a list of equipment falsely marked by plaintiff; a list of distributors' contracts containing provisions against dealing in equipment other than that of plaintiff; a partial list of competitive manufacturers whose business the plaintiff acquired; a list of patent-owners with whom plaintiff contracted to institute and maintain unwarranted patent-suits; a partial list of the patent-suits brought by plaintiff referred to in the complaint; and a list of the persons, firms and corporations among whom plaintiff circulated false rumors and to whom plaintiff made false representations. This count then charges that these acts were not in good faith, but were for the purpose of monopolizing and restraining interstate, foreign trade and commerce in all lubricating equipment.

The second cause of action or count is based on Sections 2 and 15 of Title 15 U.S. C.A., and charges that plaintiff has monopolized and attempted to monopolize, and has combined and conspired with other persons, firms and corporations named in this count, to monopolize the commerce among the several states and with foreign countries in lubricating equipment; and as grounds for that charge sets forth the same acts as are alleged in the first count.

The third cause of action is based on Sections 13 and 15 of Title 15 U.S.C.A. It charges that the plaintiff discriminated in price among different purchasers of lubricating equipment; that the effect of such discriminations has been substantially to lessen competition and tends to create a monopoly in lubricating equipment, to injure, destroy, and prevent defendant's competition in the interstate sale of lubricating equipment to the General Motors Corporation and other automobile manufacturers, as well as to manufacturers of farm, industrial and aeroplane machinery, and the lubricating equipment trade in general. It charges that from the late summer of 1934 through the years 1935, 1936, and 1937, defendant sold lubricating equipment to General Motors Corporation, to other automobile manufacturers and to other machinery manufacturers, but was forced to discontinue such sales because of plaintiff's low discriminatory price in order to monopolize said business and to drive the defendant out of said business.

The fourth cause of action or count is based on Sections 14 and 15 of Title 15 U. S.C.A., and charges that plaintiff made sales of lubricating equipment on agreements that its purchasers should not sell or deal in lubricating equipments of others, including the defendant; that the effect thereof has been, and is, substantially to lessen competition, tends to create a monopoly in lubricating equipment, and lists the contracts and agreements above referred to.

The fifth cause of action or count is based on Sections 15 and 18 of Title 15 U. S.C.A., and charges that plaintiff acquired the capital stock of certain corporations named therein which were engaged in the manufacture and sale in interstate commerce and foreign trade of lubricating equipment, and which corporations, along with plaintiff, manufactured and sold over seventy-five percent of all lubricating equipment consumed in the United States; that the effect of such acquisition was, and is, substantially to lessen competition and restrain the interstate trade and commerce in such lubricating equipment, and to tend to create a monopoly therein. This count charges that defendant has been damaged by such acts of plaintiff, and as a consequence thereof, plaintiff has deprived defendant of independent sources of supply for such lubricating equipment; that by reason thereof, plaintiff was able to induce large buyers to purchase from plaintiff to the exclusion of all others, including the defendant, thereby causing customers and prospective customers throughout the trade in the United States to buy from plaintiff.

The sixth cause of action or count charges the plaintiff with unfair competition with defendant in lubricating equipment, and the diversion to plaintiff of lubricating-equipment business which otherwise would have flowed to defendant, except for plaintiff's acts of unfair competi-

tion. The acts complained of are those hereinbefore recited as to the previous counts of the counterclaim. The defendant claims it has been damaged in its business and good will by such acts of the plaintiff.

By reason of the charges in these six counts, defendant claims damages in excess of $2,000,000, and asks that plaintiff give account of the profits which it received in consequence of its acts of unfair competition complained of in the sixth count.

It will be noted in the first five counts of the counterclaim, defendant relies on Section 15, Title 15 U.S.C.A., which gives any person injured by reason of acts forbidden in the anti-trust laws, the right to sue for such injury and recover treble damages. In addition, in the first count, defendant relies on Section 1, Title 15 U.S.C.A., making illegal contracts, combinations and conspiracies in restraint of trade; in the second count, on Section 2, Title 15 U.S.C.A., which makes monopolizing any part of trade a misdemeanor; in the third count, on Section 13, Title 15 U.S.C.A., which makes unlawful discrimination in price between purchasers; in the fourth count, on Section 14, Title 15 U.S.C.A., which makes unlawful an agreement for the sale of goods on condition the purchaser shall not use or deal in goods of a competitor of seller; in the fifth count, on Section 18, Title 15 U.S.C.A., making unlawful the acquisition by one corporation of the stock of another. In the sixth count, defendant charges plaintiff with unfair competition with defendant in lubricating equipment.

The plaintiff's objections to the amended counterclaim are that the defendant does not plead ultimate facts which show on their face the doing of acts which constitute unfair dealing, or are declared by the Sherman and Clayton Acts to be unlawful; in other words, that the defendant has merely pleaded the conclusions of the defendant that these Acts have been violated.

In our view, the counterclaim charges acts of plaintiff of a nature condemned by the Sherman Anti-Trust Act and the Clayton Act with sufficient particularity to enable the plaintiff to reply to the counterclaim. Rule 8(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that the complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Certainly this rule does not provide for setting out in detail the acts complained of, nor the circumstances from which the pleader draws his conclusions that the Sherman Act and the Clayton Act have been violated. Our opinion is that the defendant in the charges it has made in its counterclaim has gone more into detail than is required in Rule 8(a).

The recent opinion of District Judge Holly of the Northern District of Illinois, Eastern Division, in the case of United States v. Johns-Manville Corporation et al., D. C., 1 F.R.D. 548, 549, is quite in point. Judge Holly says:

"As to the motions to dismiss and for a bill of particulars, all of the defendants complain that the plaintiff has not set out facts showing a combination of the restraint of trade on the part of defendants but the allegations consist merely of the conclusions of the pleader. * * *

"It is true that it has been said many times by courts that pleadings should contain statements of fact and not the conclusions of the pleader. It has also been said that the pleader should set forth ultimate facts and not evidence, but where the line may be drawn between an 'ultimate' fact and a 'conclusion of the pleader' is something the courts have never been able to say. The object of the pleading is to give the opposite party notice of the claim that will be made against him or the defense that will be interposed. Rule 8(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that the complaint shall contain 'a short and plain statement of the claim showing that the pleader is entitled to relief'. Forms are annexed to the Rules, among them forms of complaint that are undoubtedly intended to illustrate the manner in which the charge of the plaintiff should be set out. In those forms provision is not made for setting out in detail the acts complained of but merely what counsel for defense would undoubtedly call 'mere conclusions of the pleader'. See Forms 9, 10, 11 for example.

"In this action the Government charges a conspiracy, and it must be remembered that the existence of a combination to restrain trade such as charged here can seldom be proved by the evidence of witnesses to the effect that the parties have entered into a specific, oral or written agreement for that purpose. The proof usually consists of evidence of circumstances from which that conclusion follows. The allegation of the complaint in such cases cannot, in the nature of things, be as definite and specific as in cases of a different character.

It is not necessary or proper for the pleader to set out in his complaint the circumstances from which he draws his conclusions. Nor is it necessary that such circumstances be set out to enable the defendant to answer. The complaint in this case charges agreements and understandings between the defendants of a nature condemned by the Sherman Anti-Trust Act and the Clayton Act, and with sufficient particularity to enable the defendants to answer."

In C. F. Simonin's Sons, Inc. v. American Can Co., D. C., 30 F.Supp. 901, on page 902, in a civil action for treble damages under the Sherman Anti-Trust Act, Judge Kirkpatrick has this to say concerning the sufficiency of the complaint: "Under the new Rules, 28 U.S.C.A. following section 723c, it is no longer proper to state evidentiary facts in the complaint. Rule 8(a) prescribes merely a short and plain statement of the claim, showing that the plaintiff is entitled to relief; Rule 8(e)(1) that each averment of a pleading shall be simple, concise, and direct; and Rule 12(b) (6) that the sufficiency of the complaint may be raised by a motion based upon 'failure to state a claim upon which relief can be granted.' In all these provisions the word 'facts' is rather conspicuously absent, and there can be very little doubt, whatever the prior practice may have been, there is no longer any necessity to state such facts as have been described as 'evidentiary' as distinguished from 'ultimate,' nor is it good practice." .

■ Plaintiff is also complaining that the counterclaim contains a duplication of facts alleged to constitute a violation of two or more sections of the anti-trust laws. We see no merit in this contention. There may be facts that are common to more than one stated cause of action; and there would seem to be no harm in incorporating by reference in a following cause of action what has been stated in regard to such common facts in a previous count or statement of a cause of action.

■ As to the alleged insufficiency of the allegations of the amended counterclaim concerning the acquisition by plaintiff of patents in the lubricating field (paragraphs 11, 49, 100, 111, and 120), there is no merit in this contention. The allegation is to the effect that plaintiff bought up practically all patents in the lubricating-equipment business, not for the purpose of marketing the devices covered by the patents, but for the purpose of intimidating and overwhelming and coercing the trade into dealing only with the plaintiff. If so, that would constitute a violation of the Sherman Act. See Standard Sanitary Manufacturing Co. v. United States, 226 U.S. 20, 33 S.Ct. 9, 57 L.Ed. 107; Standard Oil Co. v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926; Lynch v. Magnavox Co., 9 Cir., 94 F. 2d 883, 889, 890; Straus and Straus v. American Publishers' Ass'n, 231 U.S. 222, 234, 235, 34 S.Ct. 84, 58 L.Ed. 192, L.R.A. 1915A, 1099, Ann.Cas.1915A, 369.

■ As to the charge against plaintiff of bringing unwarranted patent suits, it is true that the plaintiff had a legal right to bring suits on patents owned by it for alleged infringement. But where, as alleged in the amended counterclaim, such suits were brought without probable cause, that is an element to consider in connection with the charges made by the defendent of violation by plaintiff of the anti-trust laws.

■ Concerning the charge made by defendant that plaintiff bought off defendants to obtain favorable decrees, that certainly is an element to be considered in connection with the charge that plaintiff violated the anti-trust laws. While it may be proper for parties to settle and compromise litigations, yet, if their conduct in that respect is in pursuance of a plan to violate the anti-trust laws, it may be considered in connection with the plan charged in the amended counterclaim.

■ The same thing is true with reference to the circularization of court decisions. The doing of that is not unlawful in itself, but may be considered in connection with the general plan charged against the plaintiff. The same thing is true as to the alleged false marking of lubricating equipment with inapplicable patent numbers. That is not of itself a violation of the anti-trust laws, but may be considered in connection with the alleged conspiracy to violate those laws. This is also true with reference to charge that plaintiff acquired competing businesses. That may be proper, but where the result has been a substantial restraint of interstate commerce, a case is made out.

■ The counterclaim alleges that plaintiff organized a corporation known as Aro Equipment Corporation, holding it forth as an "independent" in the lubricating-equipment field (paragraphs 15, 18, 100, and 111 of Amended Counterclaim) in pur-

suance of its alleged conspiracy to restrain interstate commerce. The plaintiff alleges this is wanton and reckless pleading, in view of the fact the defendant's counsel unsuccessfully raised the same issues in another patent infringement suit; i. e., Aro Equipment Corporation v. Herring-Wissler Co., 8 Cir., 84 F.2d 619. Be that as it may, it has nothing to do with the sufficiency of the allegations of the counterclaim in the instant case, in which the plaintiff is charged with a conspiracy to restrain trade. The acts of the plaintiff as to the Aro Equipment Corporation, coupled with the other acts alleged in the amended counterclaim, are sufficient to sustain the amended counterclaim.

As to the alleged contracts of plaintiff with patent owners to sue defendant, while it may be true that the fact plaintiff secured other persons to sue defendant in patent infringement suits would not of itself sustain a charge that plaintiff had violated the anti-trust laws, that fact, coupled with the other allegations of the counterclaim, seems to make out a case sufficient to sustain the amended counterclaim, and to require the plaintiff to reply thereto.

In considering plaintiff's alleged false representations about defendant's equipment, it is undoubtedly true plaintiff has the right to represent that the defendant has infringed plaintiff's patents; yet that allegation and the others in the counter-claim might properly show a conspiracy to violate the anti-trust laws.

As to the allegations that plaintiff has given to automobile dealers prices below cost on lubricating equipment, that alone might not be sufficient to make out a case; but coupled with the other allegations of the counterclaim, a case would be made out, as charged in the amended counterclaim.

The same may be said as to the alleged agreements that plaintiff entered into with reference to its distributors dealing only in the equipment of plaintiff.

With reference to the sixth cause of action in the amended counterclaim alleging unfair competition, the plaintiff contends that no cause of action is stated. This cause of action is stated in paragraphs 112 to 121 of the amended counterclaim, charging that the acts complained of in the other causes of action set forth in the amended counterclaim also constitute unfair competition. The plaintiff contends that such is not the case, because the acts complained of by defendant in the other causes of action stated are lawful. With that view we cannot agree. We are of the opinion that a good cause of action is stated in this sixth count. This view is supported by Emack v. Kane, C.C., 34 F. 46; Maytag Co. v. Meadows Mfg. Co., 7 Cir., 35 F.2d 403.

The plaintiff is also objecting to the sufficiency of the amended counterclaim, in that no special damages are alleged. We are of the opinion that no such allegation is necessary. See Maytag Co. v. Meadows Mfg. Co., 7 Cir., 45 F.2d 299, 302.

Our conclusion is that defendant, in its amended counterclaim of April 1, 1941, has stated a good cause of action, and that plaintiff's motion to dismiss should be denied. Plaintiff will be allowed thirty days in which to reply to this amended counterclaim, should it so desire. An order may be submitted accordingly on notice to opposing counsel.