CARDINAL FILMS, Inc., Plaintiff,

v.

REPUBLIC PICTURES CORPORA-
TION, Defendant.

United States District Court
S. D. New York.

Jan. 4, 1957.

Louis Kipnis, New York City, for plaintiff.

Meyer H. Lavenstein, New York City, for defendant.

EDELSTEIN, District Judge.

Defendant has moved for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C., in an action for treble damages under the anti-trust laws. Plaintiff, Cardinal Films, Inc., is engaged in the business of distributing motion pictures, prints and film in 16mm widths, for rental and exhibition by others throughout the United States. Defendant, Republic Pictures Corporation, is engaged in the production and distribution of motion pictures and in licensing the right to distribute them. In connection with its business, it processes film; that is, it develops negatives and makes the positive prints not only of its own motion pictures, but, on a commercial basis, of the motion pictures produced or distributed by others. The activities are admittedly in interstate commerce. On April 30, 1949, the plaintiff and defendant entered into an agreement in writing whereby Republic granted to Cardinal an exclusive license to distribute 16mm prints of 30 specified motion pictures, of which the defendant was and is the owner and copyright proprietor. In-cluded in the agreement was a provision that the plaintiff was to order from the defendant exclusively all prints required by the plaintiff for the distribution of the pictures, at charges provided.

It is this provision in the agreement which presents the nub of the controversy. Defendant furnished a total of 658 16mm prints to the plaintiff, and because Cardinal was unable to get the film processing done elsewhere, under the agreement, it alleges that Republic has, from the date of the contract to the date of the filing of the complaint, been in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, 15 U.S.C.A. §§ 1, 2, and Section 3 of the Clayton Act, 15 U S.C. § 14, 15 U.S.C.A. § 14, by monopolizing and restraining trade and by enforcing an illegal "tie-in" provision. The effect of the contract, it is contended, is a substantial and unreasonable restraint of competition in the processing of motion pictures, causing ultimate users and consumers of the prints of motion pictures to pay arbitrary and monopolistic prices. It is further alleged that the defendant charged higher prices for prints furnished than it charged to different purchasers of similar prints, and higher prices than other film processors would have charged the plaintiff, resulting in a loss of $7,000 to Cardinal.

A second cause of action seeks to recover, in the event that the contract should be decreed to be illegal and void, in contravention of the Sherman Act, triple the amount of an advance payment of $25,000 and of $12,000 cardinal claims it had to expend to assure itself of prints of a commercially satisfactory quality, because of the poor quality of the prints furnished.

The first issue presented is whether the provision in the licensing agreement requiring the plaintiff to get its prints exclusively from the defendant is an abuse of the lawful copyright monopoly defendant has in the motion pictures subject to the contract. Under the copyright law, the defendant has the exclusive right, 17 U.S.C. § 1,

"(a) To print, reprint, publish, copy, and vend the copyrighted work; * * * (d) * * * and to exhibit, perform, represent, produce, or reproduce [a dramatic work] in any manner or by any method whatsoever * * *." It is clear that the defendant, as copyright proprietor, could license the exhibition of its motion pictures. It seems equally clear that the defendant could license or retain the right to process and reproduce its own films. That right is obviously one included in its monopoly. It is difficult to see how the scope of the monopoly is enlarged by the granting of the one license only. The block-booking aspect of United States v. Paramount Pictures, 334 U.S. 131, 156, 68 S.Ct. 915, 92 L.Ed. 1260, wherein one copyrighted feature was licensed on condition that the exhibitor would also license another copyrighted feature or group of features, is easily distinguishable. The exhibitors' free choice of copyrighted features was restricted, but had they desired the features otherwise forced upon them, they would have had to license those features from the copyright proprietors. In the case at bar, the plaintiff wants the allegedly "tied-in" service, but he objects to purchasing it from the copyright owner. Nor is the situation at all analogous to such cases as Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 315 U.S. 788, 62 S.Ct. 402, 86 L.Ed. 363; International Business Machines Corporation v. United States, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085; United Shoe Machinery Corporation v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; or Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871. In those cases, the restrictions involved not materials within the patent monopoly, but rights to use or purchase materials not covered by patents. Here, any laboratory attempting to process one of defendant's films would be guilty of infringement. But in the I. B. M. case, supra, for example, the use in the patented machine of a card manufactured by someone else than the patentee would not constitute infringement. Here, the copyright owner derives his profit from an operation within the scope of the copyright monopoly. In the cited cases, the patent owners sought to derive profit, on the basis of their patents, not only from the patented devices, on which the law gave them a monopoly, but from unpatented materials used with the machines, thereby expanding the patent monopoly to cover the unpatented materials. The situation in the case at bar would be quite different, of course, if the copyright monopoly did not cover the processing of film.

The patent case of Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F. 2d 999, certiorari denied 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 430, is highly analogous to the instant case. There the patentee licensed the use of his device, but required the licensee to purchase it only from a manufacturer authorized by the licensor. The requirement was limited to the licensor's patented devices only. It was held that a patentee may condition the right of his licensee to purchase only from himself or his authorized manufacturer, and that the license agreement did not impose restrictions beyond the lawful monopoly of the patents. Here, the copyright owner licensed a certain use of its motion pictures, but the licensee was required to obtain the film from the copyright proprietor. The requirement is limited to those motion pictures owned by the licensor and the subject of the contract. It follows that the licensor may properly condition the right of his licensee to purchase only from the licensor the services necessary to bring the licensed use to fruition. The provision of the licensing agreement requiring plaintiff to order all prints exclusively from the defendant is not within the "tie-in" prohibition of the Clayton Act.

By the same token, since the defendant's exercise of its copyright

monopoly does not go beyond the legitimate exploitation of its exclusive privilege, there is no violation of the Sherman Act. It is true that an agreement illegal because it suppresses competition is not any less so because the competitive article is copyrighted. Interstate Circuit v. United States, 306 U.S. 208, 231, 59 S.Ct. 467, 83 L.Ed. 610. But there is no suppression of competition here beyond that permitted by the copyright law. The only competition precluded by the agreement and the only monopolization or restraint of trade involved is in connection with the processing of defendant's films, an activity over which defendant has been granted exclusive domain by copyright. There is no attempt to enlarge that domain by the leverage of the copyright, as for example, where price fixing licenses are used as a means of extending the copyright monopoly so as to govern the admission price to exhibitions which include pictures not covered by the copyright, as was found in Interstate Circuit v. United States, supra; or where a copyright holder seeks to impose price control upon future sales of an article, after having divested himself of title to it, Straus v. American Publishers' Ass'n, 231 U.S. 222, 34 S. Ct. 84, 58 L.Ed. 192; or where price maintenance on copyrighted films is shown to constitute a part of a general plan to restrain unreasonably interstate commerce in motion picture films or to monopolize or suppress competition in their exhibition, United States v. Crescent Amusement Co., 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160. Such agreements violate the Sherman Act and are afforded no immunity by the copyright laws. United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. But an agreement which goes no further than to preserve the legitimate monopoly of a copyright is not vitiated by the antitrust laws.

The defendant has also raised the statute of limitations as a bar to this suit. Title 15 U.S.C. § 15b, 15 U.S.C.A. § 15b provides that a suit for treble damages based upon a violation of the antitrust laws is barred unless commenced within four years after the cause of action accrued. The effective date of the provision was six months after its enactment on July 7, 1955. The complaint in this case was filed on June 21, 1956, so that there can be no question of the applicability of the section. Any cause of action which accrued prior to June 21, 1952, therefore, is barred. Plaintiff contends, however, that under 15 U.S.C. § 16(b), 15 U.S.C.A. § 16(b), the statute of limitations was tolled by the pendency, from July 22, 1952 to January 10, 1956, in the United States District Court for the Southern District of California, of the case of United States v. Twentieth Century-Fox Film Corporation, 137 F.Supp. 78, in which the defendant here was also a defendant. That section does provide for the tolling of the statute of limitations for private rights of action when a suit is instituted by the United States under the antitrust laws, where those private rights of action are "based in whole or in part on any matter complained of" in the Government's suit. But the matter complained of in that suit was a conspiracy to restrain interstate trade and commerce in 16mm films, pursuant to which the defendants refused to license the exhibition of those films in any place or manner that would compete with the exhibition of 35mm films. An analysis of the complaint in that action, a copy of which has been submitted by defendant, does not disclose that there were any acts of the defendants complained of by the United States common to the acts of the defendant complained of by the plaintiff in this case. See Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 232 F.2d 190, 196. The statute of limitations, therefore, was not tolled by the Government's suit in California.

Consequently, so much of the claim under the first cause of action as accrued more than four years prior to

**160**

the filing of the complaint is barred. It appears that of the 658 prints of the licensed pictures furnished by defendant to plaintiff under the contract, only 46 were furnished within the four year period. Inasmuch as plaintiff complains of a continuing violation of the antitrust laws, only so much of his damages as are attributable to those 46 prints are beyond the bar of limitations, if he has a valid cause of action. The situation is not like those in cases involving a statute of limitations in connection with continuing conspiracies. Action does not lie for a conspiracy, but for overt acts done in furtherance of a conspiracy. United States v. Pan-American Petroleum Co., 9 Cir., 55 F. 2d 753. Consequently, in a civil conspiracy, the statute of limitations runs from the commission of the last overt act alleged to have caused damage. Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 232 F.2d 190, at page 194, and cases cited. While action does not lie for a continuing conspiracy as distinguished from the overt act that puts it into execution, action does lie for a continuing violation such as is here alleged. Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 243 F. 1. The continuing violation involves the defendant's conduct (if it be a violation) in continuing the practices complained of under the contract. If more affirmative action on the part of the defendant causing damage to the plaintiff is required, Pastor v. American Telephone & Telegraph Co., D.C., 76 F.Supp. 781, it may be, as alleged in plaintiff's affidavit, the defendant's refusal to relieve the plaintiff of the restriction in the contract. At least an issue of fact on that point is raised.

On the second cause of action, the plaintiff seeks to recover treble the damages resulting from a $25,000 advance under the contract and a $12,000 expenditures because of poor quality of the prints furnished. But the $25,000 payment was made by September 15, 1949, and the $12,000 expenditure was made before June 21, 1952. Re-

covery on this cause of action is clearly barred by the statute of limitations.

Accordingly, the motion for summary judgment will be granted.